HARKIN ET AL., RECEIVERS, *v.* BRUNDAGE, RECEIVER, ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 117.   Argued December 5, 6, 1927.—Decided February 20, 1928.

1. As between two courts of concurrent and coördinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by the filing of a bill is entitled to retain it without interference and can not be deprived of its right to do so because it may not have obtained prior physical possession by its receiver of the property in dispute; but where the jurisdiction is not the same or concurrent, and the subject matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction.  P. 43.

2. A stockholders' suit having been brought in a state court to protect the assets of a corporation from wasteful and dishonest management and to restore them, when in safe condition, to the corporation after election of a new management, the attorney for the corporation fraudulently procured a postponement of a motion for receivers by agreeing in the state court that nothing would be done in the interim to affect the *status quo,* the real intention being to secure a prior receivership in the federal court.  To this end, during the continuance, a collusive creditors' suit was begun against the corporation by a non-resident, a receiver was appointed with the corporation's consent, the bill, answer and consent being filed simultaneously, and the receiver took custody of the corporate property.

Soon afterwards, receivers appointed by the state court, explaining the facts to the federal court, applied for a surrender of the property, which was denied, although the parties there at that time were limited to the corporation and the plaintiff, both charged with knowledge of the fraud, and although, due to the insolvency of the corporation, the proceeding ·in the state court could by amendment have been given the effect of a creditors' bill. The federal court proceeded to administer the corporate estate, receiver's receipts were issued and paid, some of the property was sold, some distribution made to creditors, and the rights of innocent creditors who had become parties were involved. *Held*:

(1) The means by which the state court was induced to delay exercise of its jurisdiction to appoint receivers and the failure to reveal the facts to the federal court, constituted a fraud on both courts. P. 56.

(2) Vindication of the cause of comity and good faith as between the two courts should not be limited to punitive proceedings against the lawyer whose pledge to the state court was broken. P. 54.

(3) Although the difference in character between the two suits as brought was such as to have enabled the federal court to retain jurisdiction of the property but for the fraud, when it learned of the fraud, the parties before it being both guilty, it was bound in good faith and comity to accord the state court an opportunity to exercise its jurisdiction, even to the taking of the property. P. 56.

(4) Notwithstanding the subsequent change of situation, through the administration of the estate in the federal court and the introduction of innocent parties, comity still required that the federal court, after paying reasonable compensation to its officers for work done by them, should surrender the property still in its custody to the state court receivers, but on condition that that court first confirm all that was done in the sale, disposition and distribution of assets as though done by its own decree, and so shape its pleadings, etc., that the case in that court might proceed, as a creditors' bill, to a liquidation of all debts and distribution of remaining assets. P. 57.

(5) Failing the making of such an order by the state court and its production in the federal court in a seasonable time, the pending administration in the federal court should continue. P. 58.

3. As a general rule, a creditors' bill can be brought only by a judgment creditor after a return of *nulla bona*. P. 52.

4. When a receiver has been irregularly appointed in a suit by a simple contract creditor with consent of the defendant, and the

administration has proceeded so far that it would be detrimental to all concerned to discharge the receiver, the receivership has been permitted to continue because not seasonably objected to.  P. 52.

5. A receiver is an officer of the court, and should be as free from "friendliness" to any party as should the court itself.  P. 55.

6. A conclusion of fact made by the District Court upon hearing the witnesses, will not be accepted here when the agreed stenographic report and other circumstances in the case show it to be clearly erroneous.  P. 53.

13 F. (2d) 617, reversed.

CERTIORARI, 273 U. S. 682, to a decree of the Circuit Court of Appeals affirming an order of the District Court, which denied an application by the petitioners here for surrender into their custody, as receivers appointed by a state court, of property in the custody of the respondent, as receiver appointed by the District Court.  See *post,* p. 604.

*Mr. Lloyd C. Whitman,* with whom *Mr. Bernhardt Frank* was on the brief, for petitioners.

*Mr. Edward R. Johnston,* with whom *Messrs. Ralph F. Potter* and *Henry J. Darby* were on the brief, for respondents.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This case presents a controversy between state court receivers and the receiver of a federal court over the possession of the property and assets of the Daniel Boone Woolen Mills Corporation.  It is here by certiorari to the judgment of the Circuit Court of Appeals for the Seventh Circuit affirming a decree of the district court for the Northern District of Illinois.  The receivers in the state court were appointed on the prayer of what was called a stockholder's bill.  The receiver in the federal court was appointed on the prayer of what was called a creditor's bill.  The receiver in the federal court was appointed

first; but the bill in equity upon which the state court receivers were appointed was filed five days before the bill in the federal court. The receivers in the state court filed a motion in the federal court requesting that the property in the hands of the federal court receiver be transferred to the state court receivers, on the ground that the state court by the earlier filing of the bill in that court had acquired constructive possession and its receivers were entitled therefore to actual possession of the property.

The Daniel Boone Woolen Mills was a corporation of the State of Illinois engaged in the manufacture of woolen cloth in Illinois with its principal place of business there but with additional plants in other states. It had 187,000 shares of stock owned by 1,500 individual stockholders resident in many states. It had been so badly managed during the year 1924, and its indebtedness had been so much increased that a surplus of $500,000 had been changed into a deficit of more than $2,000,000. Nevertheless, at the end of 1924, it was alleged by all parties that its assets exceeded its liabilities by $1,000,000, although the event has proved the fact to be otherwise and administration under receivership shows the debts much to exceed its assets. The mismanagement had led its president and its treasurer, both named Gumbinski, to resign, and they were replaced by Joseph Byfield as president, and Frank Solomon as vice-president. These two officials had not been able to secure the financial support necessary to meet the expenditures and conduct the business. On February 14th, 1925, therefore, Harry Hurwitz, a stockholder of the company, filed a bill in the Superior Court of Cook County, Illinois, in his own behalf and in that of all other stockholders of the corporation, " and all other firms or corporations who might be interested in the litigation, and who might seek to intervene or contribute to the expense thereof."

The averment of the bill was that during 1924 those in control had used for their own purposes the assets of the corporation, and it became the duty of the new officers to bring suit to recover the property thus abstracted, embezzled or wasted, but that nothing had been done. It averred the solvency of the company, but alleged that it was not able to pay its current expenses, that the business ought to be maintained and conducted in order to make up in salable form a great deal of material on hand uncompleted, and that in order to save the property in the interest of the stockholders and others, a receiver should be appointed who should continue the business. The prayer was for an injunction forbidding those engaged in the management from imposing any lien or mortgage on the property. In effect the bill asked for the appointment of receivers with authority to take possession of the property, carry on the business, and subsequently, after getting the property into proper condition, to provide for and call a stockholders' meeting and a transfer of the property back to a new management.

On the 19th of February, five days later, a bill was filed in the United States district court for the Northern District of Illinois by the United States Worsted Sales Company, a corporation of the State of New York, claiming to be a simple non-judgment creditor of the Woolen Mills in the sum of $6,000. The plaintiff brought the bill on its own behalf and on behalf of all the creditors of the Woolen Mills who would join in the prosecution. Its averments in respect to ownership and the disastrous operation of the company were much the same as those of the bill by Hurwitz in the state court. It specifically averred that the Woolen Mills was not insolvent but that it had been impossible to secure money with which to carry it on, that there was grave danger of the recovery of judgments and the levy of executions, and of a race for undue preferences, and that in the preservation of the property it was

necessary to appoint a receiver to continue the business, make up the uncompleted material and then to dispose of the property as the court might deem wise, by sale or otherwise, in the interest of all the creditors and of the stockholders. It asked authority for the receiver to apply in either federal or state courts of other states, in which the various factories of the Woolen Mills were situate, for ancillary receiverships. It further asked an injunction against judgments and executions of all creditors and an order requiring them to file their claims with the receiver.

Application for receivers in the state court in the Hurwitz suit had been made upon the filing of the bill, and notice given to the defendant Woolen Mills that the motion would be presented on February 16, 1925, the bill having been filed February 14th. Upon application of one Cowan, the attorney for the Woolen Mills corporation, the hearing on the motion for a receivership on the 16th was postponed until February 21st, and meantime the bill in the federal court for a receiver was filed on February 19. On the same day the Woolen Mills Corporation entered its appearance in the district court, filed its answer admitting the averments of the bill and consented to the appointment of a receiver. The appointment of Brundage as receiver was made on the following day.

On the 25th of February, the Superior Court of Cook County entered an order allowing one Max Goldenberg, a stockholder, to file in the Hurwitz suit his intervening petition, which did not in effect change the nature of the relief asked, but elaborated a description of details of the conspiracy of the Gumbinskis to loot the Woolen Mills Company, and of a conspiracy of the Woolen Mills management to evade the jurisdiction of the state court by delay in the appointment of receivers there and by the collusive answer and consent of the Woolen Mills to the

appointment of a federal court receiver. This intervening petition was adopted on March 13th by Hurwitz as an amendment to his original bill. On February 28th, the Superior Court entered its order appointing the Union Bank and Harkin as receivers of the property. In that order the Superior Court found that it had had jurisdiction of the subject matter and the parties and it empowered its receivers to prosecute and defend without further order all existing actions by or against the Woolen Mills Corporation, and enjoined the corporation, its officers and directors, from encumbering or pledging or creating any liens against the property, moneys, accounts and assets of the Woolen Mills Corporation during the receivership. On March 13th the state court receivers filed a motion in the district court in this cause setting forth their appointment as receivers in the state court and the history of the litigation, charged that the district court was without jurisdiction to appoint a receiver of the Woolen Mills Corporation or of its property, assets or records, and prayed for an order upon Brundage, as its receiver, to turn over this property now in his possession to them.

The question mainly argued in the district court and in the Circuit Court of Appeals and here was whether the state court, solely by the filing of a stockholder's bill for the appointment of a receiver, obtained constructive possession of the property and assets of the Woolen Mills Corporation. Upon this motion, evidence was taken disclosing at length the circumstances of the postponement in the state court, the filing of the bill in the federal court and the appointment of the receivers there. Of these we shall hereafter consider the effect. The district court held that the controversy in the federal court was different from that in the state court as shown by a comparison of the two bills; that the bill in the federal court was a creditor's bill, whereas that in the state court was

a stockholder's bill; that the interests of the creditors
were prior and necessarily underlay those of the stock-
holders, and that the stockholder's bill in the state court
would have been ineffective because in such a case the
court had no power to enjoin creditors from judgment
and execution against the assets, whereas the jurisdiction
in the creditor's bill gave power to preserve by injunction
the estate and thus prevent undue preference among cred-
itors.   It was therefore concluded that the creditor who
brought the bill was entitled to the receiver as prayed, and
that the appointment of the receiver gave the federal
court jurisdiction which the state court receivers could
not be permitted to disturb.

The principle which should govern in a conflict of juris-
diction like this has been a number of times stated by
this Court.   As between two courts of concurrent and co-
ordinate jurisdiction, the court which first obtains juris-
diction and constructive possession of property by filing
the bill is entitled to retain it without interference and
can not be deprived of its right to do so because it may
not have obtained prior physical possession by its receiver
of the property in dispute; but where the jurisdiction is
not the same or concurrent, and the subject matter in
litigation in the one is not within the cognizance of the
other, or there is no constructive possession of the prop-
erty in dispute by the filing of a bill, it is the date of the
actual possession of the receiver that determines the
priority of jurisdiction.   *Moran* v. *Sturges,* 154 U. S. 256,
283, 284; *Palmer* v. *Texas,* 212 U. S. 118; *Wabash Rail-
road* v. *Adelbert College,* 208 U. S. 38, 54; *Farmers' Loan
and Trust Company* v. *Lake Street Railroad Company,*
177 U. S. 51, 61; and *Adams* v. *Mercantile Trust Com-
pany,* 66 Fed. 617.   The difficulty in the application of
the rule is in determining whether the conflicting
jurisdictions are actually concurrent and the same.   A
doubtful question, too, is whether the bill is of such a

character that its filing is the taking of constructive possession of the property.

In *Palmer* v. *Texas*, the suit in the state court was an action by the State to forfeit the charter of the corporation and wind up its affairs. The suit in the United States court was an action by a stockholder to liquidate the corporation. Both were substantially alike in purpose. The state court had proceeded so far as to appoint receivers of the property and had merely delayed their taking possession until the case might be examined on appeal in the court above. The state court was held to be in constructive possession all the time, and was given priority of jurisdiction over the property as against the receivers of a federal court who had taken actual possession under a subsequent bill.

In *Farmers' Loan and Trust Company* v. *Lake Street Railroad Company*, the suit in the federal court was an action to foreclose a mortgage, and the one in the state court sought to enjoin the foreclosure. In that case the controversies were held to be substantially the same, and the filing of the bill in foreclosure in the federal court was held to be a constructive possession of the property.

In *Moran* v. *Sturges*, on the other hand, the controversy was between the jurisdiction of a state court in winding up a corporation and the distribution of its assets, which included navigable vessels, and the jurisdiction of the federal court, which had taken actual possession of the vessels, to enforce the collection of maritime liens on them. It was held that as the state court had no capacity to take jurisdiction of the maritime liens and enforce them, there was not concurrent jurisdiction, and therefore the court which first obtained actual possession of the vessels by its receiver was entitled to retain it without interference.

In *Empire Trust Company* v. *Brooks,* 232 Fed. 641, a suit was pending in the state court for the dissolution of a

corporation and the distribution of its assets under a state statute, but it had made no order appointing a receiver and had not taken actual possession of the property at the time the suit was brought.  A subsequent suit was brought against the corporation in the federal court to foreclose a mortgage upon the property and a receiver was appointed who took possession of the property and it was held in a carefully reasoned opinion that the federal court by receivership had acquired priority of jurisdiction with respect to the property mortgaged, on the ground that the issues and subject matter of the two suits were not essentially the same and that there was no conflict of jurisdiction.  See also *De La Vergne Refrigerating Machine Company* v. *Palmetto Brewing Company,* 72 Fed. 579, 584, 585.

We conclude that if the decision of this motion turned on the question of priority of jurisdiction on the face of the two bills, it could not be said that the courts were exercising concurrent jurisdiction.  The creditor's bill conferred on the court the power to enjoin the judgments and executions of creditors and the establishment of undue preferences among the creditors, whereas in the stockholder's bill no such remedy was asked and could hardly be afforded without amendment and further allegation and prayer.  Of course, as it has now turned out, because the corporation has proven to be insolvent, it would not have been difficult or be difficult now in the state court bill, by an amendment, to give the stockholder's bill the effect of a creditor's bill, with the receivers in possession.  Indeed it would seem to be its duty to do so. ·

These considerations based upon the face of the pleadings in both actions would have justified the conclusions reached in the district court and in the Circuit Court of Appeals were it not that the evidence submitted by the receivers of the state court upon the motion here under consideration discloses a fraud upon the state court by which the appointment of receivers therein was delayed in order that the federal receiver could be appointed.

There were two parties among the stockholders in the Boone Mills Corporation. Gumbinski and his associates had been ousted in November, 1924, because of charges made public against them of concealment and defalcation and mismanagement. It became a subject of newspaper comment and of great publicity because of the large number of stockholders and the wide distribution of the shares. Byfield and Solomon, who, as already said, had been made in November, 1924, president and vice-president, controlled the majority of the stock. Hurwitz as a stockholder, acting for the minority stockholders, filed the stockholder's bill and made the application for receivers to the Superior Court of Cook County. The application much affected the credit of the corporation, and it was regarded between the stockholders as an important question who should be receiver and by what court he should be appointed.

Mr. Cowan was one of a firm of lawyers that acted for the defendant the Woolen Mills Corporation, and was himself a member of the executive committee of the board of directors of that company. Mr. Byfield admits that he talked with Mr. Cowan sometime before and had expressed his opposition to anything but a federal receivership. The application for a receiver in the state court on the stockholder's bill was set for February 16, 1925. When the motion was called on that day, what followed is recited in the record as agreed upon by the parties. We have inserted it in the margin.*

---

* Mr. Gesas: If the court please, this is a Bill filed by a stockholder, seeking the appointment of a receiver, for the Boone Woolen Mills, Inc. A notice was served on the company and Mr. Cowan, who appears here this morning, advises me that the company desires a continuance.

Mr. Cowan: The situation, if the court please, is this, without going into the merits of the bill, whether or not the bill sets up such

An examination of the evidence following this post-ponement, much of which had to be drawn from the Byfield party and their attorneys, satisfies us that the facts were as follows:

The delay in hearing the motion for a receiver in the state court was procured by Mr. Cowan, the attorney for

---

grounds as would warrant this court in entering a receivership; there are certain important matters now coming before the Board of Directors of this company, which involves some very large amount of finances, and which will be seriously interfered with, if this court undertakes to hear the application, for a receivership. I think those negotiations will be concluded, within a week, and the rights of the complainant, under this bill, will not be affected in any way at all, by allowing this matter to go over for a matter of a week or ten days. I would prefer not to argue the motion this morning, but if counsel insists upon it, of course it will be necessary for me to do it.

Mr. Gesas: I think the first thing the record should disclose is whether or not these gentlemen are appearing here for the company; there is no appearance on file.

The Court: Yes, that is right.

Mr. Gesas: I appear here for the complainant.

Mr. Cowan: I appear for the company, and will file my appearance in due time.

Mr. Gesas: In your individual capacity?

Mr. Cowan: The firm of Barrett and Barrett, with which I am associated.

Mr. Gesas: Now, if the court please, in this matter, without going into the full matters, there has been a considerable fight, as your Honor happens to see, from this photographic newspaper, in which it is a fight between the former directors against the present directors and the present directors against the former directors—

The Court: And their compliments were passed back and forth?

Mr. Gesas: Yes, if the court please, and there has been a loss of over three million dollars in one year in the operation of this business, which practically has been neglected on account of no action taken by these directors, and if any continuance is granted here at all it must be—well, I think the court has a right to hear this matter; that the issues, if any at all are involved, should be tried by this court, not the newspapers, so that the good-will which the stockholders have in this business, and the value of that good-will, if there

the Boone Mills Corporation, for the purpose, if possible, of securing the appointment of a receiver in the federal court. One Grand was a stockholder of the corporation and lived in St. Louis, and represented other stockholders, all of whom were of the Byfield party. As soon as the motion was continued in the state court, a conference was held between Cowan, Byfield and Solomon. It has been said that this conference was to be held with a view of securing money to carry on the corporation, and that this was the reason for asking the delay in the state court. But we think the evidence of Mr. Solomon shows clearly that the conference was for the purpose of seeing whether

---

is any left after this terrible fight, between the old directors and the new directors, should be placed in status quo, and if there is any continuance granted, I think it ought to be done with the understanding that the status will not be changed, and that the issues be not tried in the newspapers, but by this court.

The Court: Yes, but of course, I can not control the newspapers, you understand.

Mr. Gesas: Your Honor can control the status quo.

The Court: Yes, with that understanding, but the suggestion that individuals should not seek publicity, of course,—

Mr. Gesas: The situation is this—

Mr. Cowan: Just a minute. Mr. Gesas complains about trying the case in the newspapers; one of the parties, who is charged with fraud in this bill, published half a page of an advertisement, and it was paid for, I assume, by—

Mr. Gesas: Here it is.

Mr. Cowan: (Continuing)—that is something over which we have no control, and which we didn't mail; there has been a two million dollar libel suit against the present President of the company, so that I don't think we could be charged with trying our case in the newspapers.

Mr. Gesas: I am not making any direct charge, at this moment, as to either the present directors or the former directors, as to their activities, except to say that both are guilty of seeking this publicity.

Mr. Cowan: Now, the question of publicity—

Mr. Gesas: Just a minute. May I suggest, if the court please, there is a considerable emergency in this way; from what I under-

a receivership in the federal court could be secured in advance of the probable appointment in the state court.

Mr. Cowan telephoned to Mr. Grand to come to his office with the expectation that because of his diverse citizenship he could file a stockholder's bill in the federal court. Grand suggested that a law firm of which Stern and Johnson were members should be selected. One of that firm, either Mr. Stern or Mr. Johnson, expressed the opinion that instead of a stockholder's bill a creditor's bill should be filed, because on such a bill they were more

---

stand a form letter was sent out by the present President, in which he advises the stockholders of the terrible condition he finds the company in, at the present time, with the payroll and other expenses which run about one hundred thousand dollars a week; that any great delay in this matter is going to be very harmful to the rights of the parties; of course, we are willing to grant a reasonable continuance, and if this matter goes over to about Friday or Saturday of this week, I should imagine that ought to be a reasonable time, and not have a continuance for one week or ten days. We are here to ascertain our status—

Mr. Cowan: I have no objection to its going over to Friday or Saturday, but personally I think if you let it go until Monday—

The Court: There is no court Monday; that is what the Clerk tells me. You see Washington's Birthday is on the twenty-second, and we observe it on the twenty-third, the day following.

Mr. Cowan: Saturday morning, all right.

Mr. Gesas: Saturday morning and everything remains in status quo?

The Court: Yes. Saturday morning, without further notice.

Mr. Gesas: And any notices, or affidavits that you are going to present—

The Court: Yes, have them served on the other side, naturally, either side.

Mr. Cowan: All right, Saturday morning.

The Court: Yes.

Which were all the proceedings had in the above entitled cause, on this date.

Signed and sworn to by the Court Reporter, Cleary.

318°—28——4

likely to get the receivership. Then the question arose who should be made the plaintiff, Grand, the St. Louis stockholder, not filling the requirement in such a suit. Cowan and others, with vice-president Solomon, examined the list of creditors of the company to see who could be induced to bring the creditor's bill. It was found that one Philipson, who was the agent of the United States Worsted Sales Company, a corporation and citizen of New York, had a claim for $6,000, and also that Stern was a personal friend of the agent. Accordingly, Solomon asked Philipson to turn his. claim over to Stern for the protection of the company and creditors and stockholders of the Boone Mills Corporation, saying that the purpose of having a receiver appointed in the federal court was to prevent the appointment of a receiver in the state court. Philipson replied that he would be willing to do so provided he got the consent of his home office. The statement was made to him " somewhere along the road " that there would be no expense involved to Philipson's company. Philipson telephoned his company and got their consent. Then Mr. Johnson, the partner of Mr. Stern, drafted the bill in accordance with such information as he says he had had for thirty days and such information as he obtained from Cowan and the other men who were interested. The bill was filed. The answer of the company on the authority of its directors admitting all the facts and consenting to the appointment of a receiver was filed upon the same day with the filing of the bill. Counsel for the Worsted Sales Company knew this would be done. It is unnecessary to rehearse the evidence of the persons engaged in this combination to secure in the federal court the earlier receivership; but it is very clear that the whole suit in which the receiver was appointed was brought to secure that end before the action of the state court, and that the prime actor in the whole matter,

which it does not do injustice to say had elements of a conspiracy, was the Daniel Boone Mills Company. Cowan was its lawyer and a member of the executive committee of its directors. He sought and procured the continuance in the state court. He continued to act as that company's attorney in his dealings with Grand and in the conferences between Stern and Johnson. When the form of the bill was changed from a stockholder's bill to a creditor's bill, they all, including Cowan, hunted for a non-resident creditor to consent to file the bill. The whole work was the result of Cowan's active agency. Cowan secured the delay in the state court by what on his part for his company was an agreement that nothing in the interim should be done to affect the litigation in the state court and that the status quo should be maintained. Cowan does not really deny this, though he says he did not think he went so far. What he said in court can not be contested, because it is a stenographic report. The Woolen Mills Corporation was advised that the creditor's bill to be filed could not be sustained because the nominal plaintiff was not a judgment creditor but was a simple nonjudgment creditor (*Lion Bonding & S. Company* v. *Karatz,* 262 U. S. 77, 85), and that that defect could only be remedied and immediate court action secured by an answer of the company admitting the averments of the bill and consenting to a receivership. *Pusey & Jones Company* v. *Hanssen,* 261 U. S. 491, 500. So simultaneously with the filing of the bill, the answer and consent were filed in the federal court. The complainant in the bill was as much the company's agent and tool in bringing the bill as was the Woolen Mills Company's own attorney in filing the answer, and in this aspect the suit was collusive. The complainant, the Worsted Sales Company, was therefore charged with knowledge of the fraud by which delay had been secured in the state court. The other agents whom the defendant company employed to

bring about the result, even if they did not know the means taken to secure the delay, were affected with knowledge of it, because they were acting for the Woolen Mills Company in this transaction in its pursuit of a federal court receivership. We do not impute to Stern or Johnson actual knowledge of Cowan's fraudulent method of securing a postponement in the state court when they filed the bill of complaint. Cowan says he did not tell them. Johnson denies knowledge of it, and there is no evidence that they were informed. But, as explained, their client, the Worsted Sales Company, the complainant, was charged with knowledge of it. The district court did not know these facts when the bill was filed and the receiver was appointed, but they were all brought to its attention when the motion of the state receivers was made and heard and evidence adduced March 13, 1925.

We do not wish what we have said to be taken as a general approval of the appointment of a receiver under the prayer of a bill brought by a simple contract creditor simply because it is consented to at the time by a defendant corporation. The true rule in equity is that under usual circumstances a creditor's bill may not be brought except by a judgment creditor after a return of *"nulla bona"* on execution. When a receiver has been thus irregularly appointed on such a bill without objection, and the administration has proceeded to such a point that it would be detrimental to all concerned to discharge the receiver, the receivership has been permitted to continue because not seasonably objected to (*Pusey & Jones Company* v. *Hanssen,* 261 U. S. 491, 497, 500; *Re Metropolitan Ry. Receivership,* 208 U. S. 90, 109, 111; *United States* v. *Butterworth Corporation,* 269 U. S. 504, 513).

In refusing the motion of the state court receivers for surrender of the property and assets of the Woolen Mills, the district court said:

" It must be borne in mind that the State Court did not act until nine days after the appointment in this Court,

and then upon different pleadings.   The statement in the State Court of the attorney for the defendant, even if given the extreme meaning claimed for it (a meaning which in my opinion is not warranted by the evidence) could not operate to invalidate the proceedings of this Court.   At most it amounted to an agreement, a violation of which would have been a contempt of the State Court.   If it has the force of an injunction, it would not render void the action in the Federal Court."

Again, the same court said, speaking of the state court:

" The Court had taken no action which brought defendant's property within its custody; and it was not until March 13, 1925, that it was claimed in this Court that there was any agreement in the State Court beyond the terms of the order of February 16, 1925.   In the meantime, the Federal Court here and in other districts proceeded with the administration of the affairs of the defendant corporation.   As Judge Lurton said, it would lead to absurd results and inflict unwarranted injury upon innocent parties, if the alleged oral agreement of the attorney in the State Court, of which there was no record, can be invoked to invalidate the proceedings here."

We differ radically from the trial court as to the purpose and effect of the conduct of Cowan in securing the postponement of the hearing for a receiver in the state court.   Ordinarily we should acquiesce in a conclusion of fact by the court that heard the witnesses in such a case, but here the evidence of what was said in the state court is on a stenographic report agreed upon by the parties, and the other circumstances make the necessary inferences therefrom clear.

Nor can we take the view that when the motion of the state court receivers applied for surrender there were then in the federal court case innocent parties upon whom surrender to the state court of the property would work any hardship, for no creditor had come into the case except the complainant, which by its actual relation to the

proceeding was charged with knowledge of the means by which a receivership had been obtained. In respect to the effect of the evidence, the language of the Circuit Court of Appeals shows it took a different view of the facts from that of the district court:

" That the conduct of debtor's first counsel (not the counsel appearing in this court) was far from commendable, is unfortunately, most apparent. It is, happily, not a frequent occurrence that an attorney for a debtor seeks the creditor and urges him to bring suit against his client, or turns over his client's list of creditors to an attorney soliciting business, to say nothing of the violated pledge to the judge and opposing counsel. Moreover, good faith required this counsel to have advised the Federal District Court of the pendency of the State court proceedings.

" The case is one where in their determination to control the receivership, counsel proceeded with such speed and zeal that the code of professional ethics was entirely ignored and forgotten. Counsel should avoid these hurried *ex parte* applications for friendly receivers. In fact, there should be no ' friendly receiverships.' Whenever possible, notice should be given to any and all interested parties. When the debtor corporation appears, however, and consents to such appointment, the court must rely on counsel to inform it as to all the facts. If essential facts are deliberately withheld, counsel may well forfeit his right to practice further, or be otherwise disciplined.

" Notwithstanding the prejudice which this conduct has created, we have approached the question with the understanding that the client's rights rather than attorney's conduct must be the basis for the determination of this litigation."

But we do not agree with either of the courts below that the vindication of the cause of comity and good faith as between the two courts should be limited to punitive

proceedings against the lawyer in the state court whose pledge to that court was broken.

In this country, in which in every state we have courts of concurrent jurisdiction under the federal and the state authority, it is of the highest importance that conflict of jurisdiction should be avoided. It can only be avoided by forbearance and comity, and by enforcing upon the parties and counsel engaged the utmost good faith and the fullest disclosure in one jurisdiction with reference to what are the exact facts relevant to litigation in a corresponding case in the other. This is especially true with respect to receiverships. The desire of those who represent an embarrassed corporation to seek a refuge from active and urgent creditors under the protecting arm of an officer of the court, leads to strenuous efforts to frame a case which may under equity practice justify a receiver. More than this, circumstances which should have no influence lead the parties in interest to prefer one court to another in the selection of the person to be appointed as receiver, with the hope on behalf of those in charge of the embarrassed corporation that the appointment may fall to one whose conduct will be in sympathy with, rather than antagonistic to, the previous management of the corporation, in the hands of which the embarrassment has arisen. As the Court of Appeals says, there should be no " friendly " receiverships, because the receiver is an officer of the court and should be as free from " friendliness " to a party as should the court itself. Nor should there be any competition or rivalry on the part of the two courts themselves in regard to assuming jurisdiction. The temptation of the exercise of power and patronage in the selection of receivers and the management of great businesses under the court should not be a feather's weight in prompting court action. Each court should examine with nicety the question of the right of the parties to have

a receiver and should advise itself in regard to the circumstances making it its duty to exercise this delicate jurisdiction. If the court finds that by misrepresentation or by a false pledge another court has delayed action by which the possession of the *res* would have been taken before the application in hand was made, it should insist that the parties and counsel who have misled the other court must give that court full opportunity to remedy the wrong done. What was done here in delaying the state court and inducing the federal court to act without a full disclosure of what had been done in the state court, was a fraud not only upon the state court but upon the federal court itself, and when the federal court learned the method by which its jurisdiction to appoint a receiver had been invoked, it should have denied to those who were guilty the further use of its jurisdiction until after the state court had been given an opportunity to exercise the jurisdiction which it was entitled to exercise, even to taking possession of the property. As we have already said, there was, when the district court herein came to know the facts, no party before it who was not to be charged with a knowledge of how its jurisdiction had been secured.

It is quite true, as already said, that if there had been no chicanery in the delay of the proceeding in the state court, the difference between the two proceedings would have justified the retention of the jurisdiction by the federal court. But the two proceedings, while not the same, were closely related, and the proceeding in the state court must by the subsequent insolvency have resulted in reframing in the state court the pleadings so as to make it a creditor's bill. Hence they were closely enough related to call upon the federal court to refuse thereafter to continue jurisdiction through its receiver, and to surrender custody of the *res* to the receivers of the state court. Such action we deem to have been that which the comity

and the good faith of a federal court owed to the state court.

But now the condition has changed, and the rights of innocent creditors who have since become parties are involved, the court and the receiver have proceeded to administer the property, have found it necessary to issue receiver's certificates, and have paid them, have sold some of the property and have made some distribution to the creditors. It would be in some ways easier to allow the settlement to go on as it is, but this would not comport with the obligation of a federal court to observe and emphasize the highest good faith and comity towards state courts in matters where the two have concurrent jurisdiction. We therefore shall direct the district court to reverse its action in denying the motion to surrender through its receivers the property of the estate still in its custody to the state court receivers. But the surrender should be only on condition that the state court receivers produce an order from the state court confirming all that has been done in the sale of the property, the disposition of the assets and the distribution thereof as if it had been by its own decree and shall so shape the pleadings and its orders that the case may proceed in the state court as a creditor's bill and a liquidation of all the debts, to enable it to proceed to the complete distribution of all remaining assets in liquidation, as it would have had to do, in view of the insolvency, in a continued administration under the stockholder's bill. The federal court should, before surrender, fix and pay the compensation due to its officers for the work done by them and, in doing so, should take care to fix the compensation within limits which are plainly reasonable. After this and other preliminaries are attended to, all the assets then in the hands of the receiver of the federal court shall be turned over for further and complete distribution in the suit in the Superior Court of Cook County. If such an order of the state court, as is

herein prescribed, is not entered in that court and produced in the federal court in a seasonable time, the pending administration in the federal court under the creditor's bill shall continue.

The decrees of the Circuit Court of Appeals and of the district court are reversed and the case is remanded to the district court for further proceedings in conformity with this opinion.

*Reversed.*

