In re INSULL UTILITY INVESTMENTS, Inc.

FENTRESS v. BIGELOW et al.
(three cases).
Nos. 5171–5173.

Circuit Court of Appeals, Seventh Circuit.
Jan. 2, 1935.

`Edwin H. Cassels, William S. Warfield, III., and Richard H. Merrick, all of Chicago, Ill., and Lawrence T. Allen and Everett L. Dalbey, both of Danville, Ill., for appellant.

Lessing Rosenthal, Charles H. Hamill, and Leo F. Wormser, all of Chicago, Ill., for appellee Bigelow.

Samuel A. Ettelson, of Chicago, Ill., for appellee Ettelson.

Before SPARKS, FITZHENRY, and ANDERSON, Circuit Judges.

SPARKS, Circuit Judge.

These appeals arise out of the ruling of the District Court in the bankruptcy proceedings of Insull Utility Investments, Incorporated, with respect to compensation to appellant as receiver, and fees for his attorneys. The claims were as follows:

1. (a) $10,000 for his services as receiver in bankruptcy in the District Court for the Northern District of Illinois, Eastern Division, and ancillary receiver in bankruptcy in the District Court for the Southern District of New York.

(b) $7,500 for his services as ancillary receiver in equity in the District Court for the Southern District of New York.

2. $9,000 for fees of Allen and Dalbey as his attorneys as receiver in bankruptcy in the District Court for the Northern District of Illinois, Eastern Division.

3. $5,000 for fees of Cassels, Potter and Bentley as his attorneys as receiver in bankruptcy in the District Court for the Northern District of Illinois, Eastern Division.

The trustee in bankruptcy made no objection to the amounts thus claimed. Appellee Ettelson made no objection to claim 3, but filed her written objections to the other claims on the ground that they were exorbitant and excessive. She objected further to claim 1 on the ground that Fentress was nominated and appointed as such equity and bankruptcy receiver at the instigation of, and in collusion with the bankrupt. She further objected to claim 2 on the ground that Allen and Dalbey were nominated and appointed as such attorneys at the instigation of, and in collusion with the bankrupt.

The court after hearing evidence upon the petition and the objections, filed its memorandum opinion on December 22, 1933. On January 20, 1934, it found the facts specially and rendered its conclusions of law thereon,[1] and on the same day rendered three separate judgments to the effect that the petitions of appellant Fentress, Allen and Dalbey, and Cassels, Potter and Bentley, were denied in accordance with the views set forth in its written opinion. The expense accounts of both firms of attorneys were allowed. The memorandum opinion, which appears in 6 F. Supp. 653, 660, differs from the one first filed, as shown by the record, in that it adds the point that there was no ground for the appointment of a receiver in bankruptcy.

The facts pertinent to this controversy, as disclosed by the record, are as follows: On April 16, 1932, upon a creditors' bill in equity, filed in the District Court from which these appeals are prosecuted, appellant and one Cooke were appointed co-receivers of Insull Utility Investments, Incorporated. Cooke served in that capacity until his resignation on September 26, 1932, and appellant served until December 2, 1932, when he delivered the assets in his possession to himself as sole receiver in bankruptcy, having been so appointed on September 22, 1932, the day on which the Utility Investments Corporation was adjudicated a bankrupt on a petition filed on April 16, 1932. Appellant served as receiver in bankruptcy until the appointment of the trustee in March, 1933, and shortly thereafter, on March 30, he turned the assets over to the trustee in bankruptcy.

On May 19, 1932, appellant was appointed as ancillary equity receiver by the United States District Court for the Southern District of New York in order to safeguard valuable securities held as collateral by certain banks in New York City, and for the same reason, on October 5, following the adjudication, appellant was appointed ancillary receiver in bankruptcy in the Southern District of New York, and served as such until he was succeeded by the trustee in bankruptcy. In this jurisdiction and also that of the Southern District of New York, orders of court were procured by appellant and his attorneys temporarily enjoining the sale of pledged collateral of the approximate value of ten million dollars.

Under authority of the court, appellant employed the law firms of Allen and Dalbey, and Cassels, Potter and Bentley, who served as his solicitors in the equity case, and as his attorneys in the bankruptcy case in the jurisdiction of the Northern District of Illinois.

On August 29, 1932, prior to the bankruptcy adjudication, the District Court, on petition of appellant and his co-receiver, allowed on account, from the date of their appointments to September 15, 1932, the sum of $7500 to appellant as equity receiver, and the same amount to each firm of attorneys as

---

[1] Findings of Fact.

"1. That the sum of $12,500 heretofore paid said Calvin Fentress is adequate compensation for all of the services which were necessarily rendered by him as receiver in the equity suit in the Northern District of Illinois and in the ancillary receivership matter in the Southern District of New York and in the bankruptcy receivership matters.

"2. That the sum of $12,500 heretofore paid to attorneys Allen and Dalbey is fair and reasonable compensation for all of the legal services which said firm necessarily rendered to their client, Calvin Fentress, receiver in equity and as receiver of the estate of Insull Utility Investments, Inc., a bankrupt.

"3. That the sum of $12,500 heretofore paid to attorneys Cassels, Potter and Bentley is fair and reasonable compensation for all of the legal services which said firm necessarily rendered to their client, Calvin Fentress, receiver in equity and as receiver of the estate of Insull Utility Investments, Inc., a bankrupt."

As Conclusions of Law.

"The court finds that no further compensation should be allowed out of the bankrupt estate of Insull Utility Investments, Inc. either to Calvin Fentress for services by him rendered as equity receiver or as receiver of the estate of Insull Utility Investments, Inc., a bankrupt, or to Allen and Dalbey, as attorneys for said Calvin Fentress, receiver, or to Cassels, Potter and Bentley, as attorneys for said Calvin Fentress, receiver."

fees for their services in the equity proceeding. After the adjudication in bankruptcy, on December 8, 1932, the District Court sitting as a court of bankruptcy, on petition of appellant and his co-receiver filed in the bankruptcy court, allowed to appellant on account for services in the equity case, the sum of $5000, and a like amount to each firm of attorneys as fees for their services in the equity proceeding.

After appellant had finished his work as receiver in bankruptcy and had delivered the assets to the trustee, he applied, in connection with his final report and account, for the compensation here involved covering his own services and those of his attorneys in the bankruptcy case only, and his own services as ancillary equity receiver in New York. The application was made to the bankruptcy court with the approval of the United States District Judge for the Southern District of New York before whom the ancillary equity proceedings were had, for the reason that there were no available assets in the New York jurisdiction for the payment of the fees in that proceeding.

No objection to his final report as receiver in bankruptcy was made and pursued, except by appellee Ettelson. The report was approved except as to the compensation requested, and appellant was discharged as such receiver on January 25, 1934. At the hearing on the questions raised by appellee Ettelson's objections, there was no evidence offered by either party as to the value of the services or as to the fees, but the services were set forth with particularity. It was not contradicted that Allen and Dalbey had spent a little more than ninety days, and Cassels, Potter and Bentley, 724¾ hours, solely in the bankruptcy case, and it does not appear specifically how much time was devoted by them in the equity receivership proceedings. The record does not disclose that the equity receiver's final report as an entirety was ever approved by the court.

It is contended by appellant (1) that the District Court, under the Bankruptcy Act, had no power to deny any compensation to appellant and his counsel for their services in the bankruptcy case; (2) that the District Court could not rightfully deny appellant any compensation for his services as ancillary receiver in equity in the Southern District of New York; and (3) that the District Court had no right or power to review the orders of another District Judge of the same court in the same case.

In denying appellant's petitions, it would seem on first impression that the court had refused compensation to the petitioners for the services rendered in the bankruptcy proceedings, and had also refused compensation to appellant for his services rendered in the ancillary receivership in equity. It will be noted, however, that the judgment recites that the petitions were denied in accordance with the views set forth in the opinion. A perusal of the opinion discloses that the court did not hold that the petitioners were not entitled to compensation for their services, or that the services were not efficiently and honestly rendered. Indeed, the court's views were quite the contrary, but it held that each petitioner had already received an amount sufficient to compensate him for all services rendered in all the cases. It can scarcely be held that appellee Ettelson prevailed in her contentions. The result indeed was the one she sought, but it certainly was not obtained upon the theory which she presented. It is true, she alleged in her answer that the claims with the exception of that of Cassels, Potter and Bentley were exorbitant and excessive, but she offered no evidence to meet appellant's case in that respect. Her attack was on the theory of collusion in both the equity and bankruptcy proceedings, and on that theory she asked that the petitions be denied in toto. The court found that the suit for an equity receivership was collusively brought, but it did not find that Fentress was knowingly a party to the collusion. Notwithstanding the fact that his appointment as equity receiver was one of the objects of the collusion, the court said he was entitled to compensation. It further found that there was no collusion in the appointment of Fentress as receiver in bankruptcy, but that he was appointed on the court's own initiative, and uninfluenced by any outside recommendations. . The court commended him in the highest terms, and said he deserved the appointment as receiver in bankruptcy on account of his vigilance, honesty and industry, and the valuable service which he had rendered in the equity receivership. It further stated that no creditor, debenture holder nor anyone had objected to such appointment, and that there was no collusion in the naming of counsel. It is obvious, therefore, that the court's views were not the same as appellee Ettelson's. The opinion proceeds upon the theory that the court of bankruptcy had a right to review the prior allowances made both in the equity receivership and also by a different judge in the same court of bankruptcy. The

court said: "While the objecting creditor has not contested the amount of the fees, if the right to recover exists at all, the court is not so readily absolved from responsibility. The court must determine the reasonableness of the charges, even though no objections are made by any security holder."

With respect to the issue relied upon by appellee Ettelson, the court said: "Whether the compensation of a receiver appointed under the circumstances here shown should be denied in toto (where creditors do not object and the receiver renders valuable and honest service) or whether such compensation should be charged to the plaintiff who brought the suit, need not be decided in view of my determination of the fair value of the receiver's services *necessarily* rendered." We are constrained to believe that a decision of the two questions referred to was quite necessary for a proper and final determination of the suit, and we think the language of the opinion when considered in its entirety answers both questions negatively. In stating the issues to be considered, the court had said: "There are two specific questions which the court must determine: (a) Was there such collusion * * * as to justify the refusal of any compensation to him and to his attorneys? (b) If not, what sum would compensate him for work performed and what sum should be allowed his counsel for services rendered?" This means that unless the first question were answered negatively, it would be unnecessary to answer the second. However the court said: "I fix the value of his services at $12,500 in this case." This we think negatives the idea that the court was not passing on the question of sufficient collusion to justify the refusal of fees.

The petitions involved final allowances for services, the settlement of which would permit a closing of the trusts immediately. If the issues were such as to permit a final adjudication as to all controverted questions, a speedy administration of justice would demand that they be determined at once. The court said that the bankruptcy receivership was not tainted by collusion and that the services rendered therein were of much value and well performed. If under such circumstances those services were necessary, the statutes required payment therefor, and there was no ground for denying payment in toto, or compelling payment from any source except the estate. It is clear that the court placed what it regarded as a fair value on the services of each petitioner, and this included all services in both receiverships. The court said:

"Under all the circumstances the court finds that the allowance of $12,500 in each case is sufficient. The court concludes that further allowance in either case would be unjustifiable." In other words, there is present a clear intention to compensate petitioners for all necessary services rendered, and that intention is accomplished by paying for all necessary services rendered in the bankruptcy receivership and the ancillary equitable receivership by permitting petitioners to retain what the court regarded as an excessive allowance in the equity receivership. If the court had authority to review the prior allowances of another judge in the determination of values, it was likewise authorized to determine whether those allowances should be denied in whole or in part and refunded to the estate. Surely it will not be presumed that the court intended to pay for services which it considered valuable, if necessary, out of funds in petitioners' hands which later might be recovered in toto for the benefit of the estate. That could scarcely be regarded as compensation. There was no reason for leaving that question open for future consideration, and there were many reasons for not doing so. We think it was not left open but was decided in the negative.

The opinion states that the court's valuation covers all services *necessarily* rendered. It nowhere holds that petitioners' services were not necessary, but it suggests that there was no ground for the appointment of the receiver in bankruptcy under subdivision 3 of section 2 of the Bankruptcy Act (11 USCA § 11 (3). With that suggestion there can be no controversy, for there was no finding of necessity, and under those circumstances, the equity receiver should have continued in possession. That fact, however, does not necessarily mean that the receiver's services in the bankruptcy were not necessary. Both proceedings were before the same judge, and no objection was raised by anyone. If there had been, the error, no doubt, would have been immediately corrected by permitting the first receiver to continue in possession or by showing a necessity for the appointment of the second, for at no time was there a clash of jurisdiction. Fentress was not a lawyer, and in view of the fact that no person interested made objection, he had no reason to question the court's power. He did precisely the same work in the bankruptcy receivership that he would have done in the equity receivership had it continued. No one questioned his able administration or doubted the necessity of his services. That

he acted in good faith is evidenced by the fact that during the receivership he refused to accept any compensation from the business corporation of which he was a member, but relied upon the appointment made by the bankruptcy court, and devoted his entire time to that work, to the satisfaction of everyone concerned. Certainly the bankruptcy court which operates on equitable principles should not be heard to say under these circumstances that Fentress should lose the value of his services on the ground that they were not necessary, merely because of the court's oversight in making the appointment. Especially should this not be done where, ·as here, there was no objection made, and the question was raised for the first time after appellant filed his brief in this court. To do so would clearly be inconsistent with the ruling as to receiver's fees and costs in Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457, and Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435.

This brings us to the question: Did the District Court have the power to review the orders of allowance for services by another District Judge of the same court in the same case? The court based its right to review those orders on Gross v. Irving Trust Company, 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215. We think the question presented in the instant case was not involved in the Gross Case. There the sole question was whether or not the state chancery court had the power to fix the compensation of its receivers and their counsel after bankruptcy had supervened within four months of the filing of the bill of complaint in, and the appointment of receivers by that court. It was there held that the state chancery court had.no such power. But in the instant case the allowance of $7500 to each of the petitioners was made by the District Court sitting in chancery *before* bankruptcy had intervened. The second allowance of $5000 to each petitioner was not made by a different court, but by the bankruptcy court itself although by a different judge.

In Heinze v. Butte & Boston Consolidated Mining Co. (C. C. A.) 129 F. 337, it was held that allowances to a receiver before final settlement are interlocutory rather than final, and that they therefore are not appealable, but are subject to review on final settlement of the receiver's account.

In Hume v. Myers (C. C. A.) 242 F. 827, 830, a court of equity had appointed receivers of a corporation on the ground of insolvency at the instance of a stockholder owning nearly all the stock, in a proceeding to which no creditor, secured or unsecured, was made a party by service. While the property was undisposed of in the hands of the receivers, the corporation was adjudicated a bankrupt. The court of equity then ordered its receivers to turn over the corporate property to the trustee in bankruptcy, and by the same order fixed the compensation of the receivers and their counsel, without making provision for its payment. The question was whether the order of the court of equity, making the allowances, was binding as res adjudicata on the court of bankruptcy. In holding that such order was not binding, the court said:

"There is a distinction between the effect of the order before us and an order of a court of equity making such allowance, where the property has, through the instrumentality of the receivers, been disposed of, and the purchase money is in the hands of the receivers. In the latter situation there is reason in the view, though we do not commit ourselves to it, that the court of equity turns over only the net fund in its hands after deducting the expenses incurred in its production, including the compensation of its receivers and their counsel. It is true that in many of the cases broad language is used in favor of the authority of courts to fix the compensation of their officers; but these cases related to allowances and payment from funds in hand, not to fixing charges upon specific property to be turned over to the bankruptcy court. [Citing cases.] * * * When the court of equity has not reduced the property to money, it is not in possession of that definite knowledge of the value of the property which is an important factor in finally fixing compensation.

"Any real services * * * will be allowed as a preferred claim in the administration of the property and the distribution of its proceeds to the extent that the services have benefited the estate. * * * But orders for such allowances are purely administrative, subject to entire disallowance or change by either increase or decrease with the development of the administration. The order of Judge Waddill * * * making allowance to the receivers was purely administrative. It was subject to change at his discretion at any time at least before actual payment, as long as he had the responsibility of administration. When the responsibility of administration fell upon Judge McDowell, with it came the power to exercise the same discretion. The point of logical contradiction, not to say absurdity, is reached when

it is said that an allowance which Judge Waddill could have revoked, or increased or diminished, at his discretion, attached to the property as it passed to the bankruptcy court as an unalterable judgment beyond the control of the judge of the bankruptcy court.

"The true rule is this: When a court of equity appoints receivers of corporate property, its allowance to its receivers and their attorney is an administrative order, presumptively right as to the justice of the allowance. When the corporate property falls by operation of law into the bankruptcy court, that court by comity will indulge the presumption in favor of the correctness of the allowance; but the court of bankruptcy, having the responsibility of administration, must exercise its independent judgment, giving due weight to the presumption in favor of the administrative finding of the court of equity. This, we think, is what the Supreme Court meant in the case of In re Watts, 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933, when it said: 'It has been already assumed that the bankruptcy proceedings operated to suspend the further administration of the insolvent's estate in the state court, but it remained for the state court to transfer the assets, settle the accounts of its receiver, and close its connection with the matter. Errors, if any, committed in so doing, could be rectified in due course and in the designated way.'

"The rectification of errors in due course and in the designated way here referred to must mean rectification by the bankruptcy court, for after the assets are turned over to that court all orders relating to the matter must emanate from that court."

We are in accord with the principles enunciated in the case last quoted, and we think they are applicable to the facts now before us, even though the receivers here had sold a large amount of securities which they had received as a part of the assets. We think it illogical to say that a court of bankruptcy has a right to review allowances for services made to a receiver by a prior judge when the assets have not been converted into cash; but if they have been converted into cash there is no right of review, and that only the net fund shall be turned over to the bankruptcy court after deducting the expenses incurred in its production, including compensation for its receivers and their counsel. We think the right to review must be based on a more reasonable and rational basis than the mere incident of sale of assets.

There is a line of cases, however, holding that one judge will not review the rulings of another in the same court. Appleton v. Smith, 1 Fed. Cas. page 1075, No. 498; Commercial Union of America v. Anglo-South American Bank (C. C. A.) 10 F.(2d) 937; Hardy v. North Butte Mining Company (C. C. A.) 22 F.(2d) 62; Jurgenson v. National Oil & Supply Co. (C. C. A.) 63 F.(2d) 727. With this principle we are in accord, but we think it is not applicable to the case at bar. In each case cited in support of the rule, the question raised related to an action or nonaction of the court which was purely judicial in its character, and not administrative. In the Appleton Case, a Circuit Justice, sitting in the District Court, declined to consider a motion to quash an attachment on the ground of wrongful issuance, because the regular judge of that district had formerly overruled a like motion in the same case. In the Commercial Union Case, it was held that where a District Judge denied a motion to dismiss a complaint, his decision was the law of the case, and should have been so recognized by another judge subsequently sitting in the same court and in the same case. In the Hardy Case, it was held that where an order appointing receivers is made in a suit within the jurisdiction of the court making the order, and in the exercise of judicial discretion, another judge sitting in the same court, and on the same record, may not of his own motion or otherwise vacate the order of appointment because, in his opinion, the order was mistakenly or improvidently made. The same ruling was followed on practically the same facts in the Jurgenson Case.

Counsel for appellant have also cited Gross v. Irving Trust Company, supra, in support of the rule. That case involved the allowance of fees by a state chancery court *after* bankruptcy had intervened. A review was permitted and the allowance was set aside because the chancery court had no power to make an allowance after bankruptcy had intervened. That ruling is not tantamount to holding that the allowances of an equity receiver, made before bankruptcy, may not be reviewed by the bankruptcy court, for that question was not before the court.

It seems to us that the rule was intended to apply to orders and rulings of the court which are purely judicial in their character, that is to say, rulings upon questions of law, or law and fact, upon which the orderly procedure of the case depends. Its object, of

516

course, was to expedite the administration of justice, and to prevent undue controversies between courts of co-ordinate jurisdiction. We think, however, that the rule was never intended to apply, and cannot logically be applied, to purely administrative orders of the court, such as allowances for compensation. So far as we know, those questions have always been considered open ones, for modification and revision, until the final report is approved. This is obviously true where there has been no change of judge; and when the jurisdiction of the original judge ceases by operation of law, or otherwise, before the final report is approved, as in this case, we think it necessarily follows that his successor in jurisdiction of the subject matter must have the same powers as the original judge.

This was evidently the view of the judge of the equity court, for after bankruptcy had intervened and while he was sitting in bankruptcy, he allowed $5000 to each petitioner, for their work in the equity case, and in each order, he expressly reserved the matter of final determination of compensation until further order. That the petitioners considered the matter an open one is evidenced by the fact that their claims which were allowed were stated by them to be "on account." We hold that the court had the power to review the allowances made by his predecessor in the bankruptcy case, and also those made in the equity court.

 The remaining question is as to the amount of the allowances and these we are not inclined to disturb. The amount that should be allowed as compensation for such services as were performed here is a matter concerning which men might honestly disagree. There is no hard and fast rule which can accurately guide the arbiter and safely protect all parties against every contingency. The trial court's judgment in such matters is quite as likely to be right as ours, and we are not permitted to disturb his judgment in this respect unless there is clear error, or such abuse of discretion as would amount to error. We have no doubt that the compensation sought was excessive. It may be truthfully said that the claims were no larger than others which have been allowed for similar services, in fact there have been many which were much larger. Past custom might well be considered as a matter of justification in filing the claims, but it does not fully answer the merits of the question before us. We think that quite generally allowances to receivers and their counsel have been greatly

exorbitant, and that the office of receiver has been made entirely too attractive in this respect. Of course first class men should be paid first class compensation, and the courts should seek no others for their receivers. It would be most unfortunate for the courts and the people generally if compensation for such officers were reduced to such an extent as to render the services of capable men inaccessible. If that condition arises it will be corrected, but until it becomes more imminent than it is at present, we feel there is no cause for alarm.

It is true that there is no testimony as to values in the record which would precisely support the court's finding, but we think that was not necessary. The court cannot be bound by agreements of counsel on questions of this kind, and especially is this true when all parties interested in the amount of the allowance are not represented by counsel. The court may and should exercise its own judgment as to values, and unless there is an abuse of discretion in this respect we are not permitted to interfere. We can not say from the evidence or the lack of evidence in this record that the court abused its discretion.

Order affirmed.