In re PRUDENCE CO., Inc.

**BROOKLYN TRUST CO. v. PRUDENCE CO., Inc., et al.**

No. 40.

Circuit Court of Appeals, Second Circuit.

Nov. 1, 1937.

Cullen & Dykman, of Brooklyn, N. Y., (Ralph W. Crolly and Patrick J. Mahoney, both of Brooklyn, N. Y., of counsel), for appellant.

Thomas Cradock Hughes and Emanuel Celler, both of New York City (Irving L. Schanzer and Hubert Margolies, both of New York City, of counsel), for appellees trustees of the Prudence Co., Inc.

Before MANTON and CHASE, Circuit Judges, and COXE, District Judge.

MANTON, Circuit Judge.

March 1, 1927, the Prudence-Bonds Corporation, owner of bonds and mortgages, pledged the same as collateral security for the payment of its bonds amounting to $4,300,000. These bonds were sold to investors and guaranteed as to principal and interest by this debtor (Prudence Company). The Prudence-Bonds Corporation at the same time entered into a trust agreement with the appellant, pledging with it these bonds and mortgages for the benefit of bondholders. This debtor was not a party to that agreement, but the Prudence-Bonds Corporation was the owner of the equity of the pledged collateral. The debtor, however, had a revocable agency to service this collateral which existed prior to the present section 77B (11 U.S.C.A. § 207 and note) proceeding filed January 24, 1935, and which was terminated prior thereto because of the debtor's default on its guaranty. A provision of the agreement permitted the Prudence-Bonds Corporation and/or the debtor, so long as there was no default upon the agreement, to service the collateral, and this was done by the debtor as agent. There was a default of interest on these bonds March 1, 1933, which was a sufficient default under the agreement to terminate the right of service. In re Prudence Co. (C.C.A.) 82 F.(2d) 755; Pres., etc., of Manhattan Co., trustee v. Prudence-Bonds Co. et al., 266 N.Y. 202, 194 N.E. 408. By such default the bondholders under the agreement had the right to terminate, through their trustee (appellant), the agency of the debtor. The trustee thereafter could manage the collateral for the benefit of the bondholders. Appellant, on October 19, 1934, on behalf of the bondholders, because of the default, declared all the bonds then outstanding due and payable 30 days after the date of such declaration, and on October 23, 1934, also terminated the agency of the Prudence-Bonds Corporation and its trustees in reorganization, and of this debtor to service the collateral.

On application of the debtor's trustees, on February 16, 1935, the District Court made an order authorizing and directing the debtor's trustees to service this col-

lateral. Appellant thereupon instituted a proceeding in the court below for an order directing the debtor and its trustees to comply with the revocation notice and to enjoin the debtor's trustees from servicing the collateral. This application was heard March 4, 1935, and five months later the relief prayed for was denied.

On appeal the decision was reversed. In re Prudence Company, Inc. (C.C.A.) 82 F.(2d) 755. See, also, Metz et al. v. Mfgrs. Trust Co. (C.C.A.) 88 F.(2d) 634. There we held that the debtor had no interest in the property except by virtue of the agreement for servicing. It did not own the pledged property; it was the guarantor of the bonds issued by the Prudence-Bonds Corporation, and, when it defaulted, the privilege, which the agreement had made conditional upon the continued performance of its guaranty, came to an end. The order entered on the mandate issued by this court reversed the former order which had allowed a continuance of the servicing arrangement. The trustees of the debtor thereupon turned over the collateral to the appellants, but retained in a segregated account $22,776.77 of the income collected from the collateral, asserting that it belonged to the debtor as compensation for servicing the collateral from February 1, 1935, to July 15, 1936; which period was subsequent to the termination of the agency by the appellant. This sum represents one-ninth of the net income collected on the collateral during the period. The application made to pay over this sum was denied.

The question presented is whether the debtor under these circumstances is entitled to any compensation for servicing such collateral. The court having jurisdiction over this pledged collateral was that supervising the reorganization proceedings of the Prudence-Bonds Corporation. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 640, 43 S.Ct. 641, 67 L.Ed. 1151; Speakman v. Bryan (C.C.A.) 61 F.(2d) 430. Any application for reimbursement of expenses for servicing this collateral during this period should be considered in an appropriate proceeding addressed to that court. We express no opinion as to whether or not what, if any, sum should be allowed.

Under the terms of the agreement, the debtor was not entitled to any fee as compensation so long as its default as guarantor was uncured. Any sums retained while the default existed were illegally withheld and, if segregated as they were, may be reached by this application. The orders of the court below dated February 16, 1935, and August 16, 1935, respectively, referring to this collateral and the servicing thereof, were null and void for lack of jurisdiction, and neither the debtor nor its trustees acquired any rights therefrom. Ex parte Rowland, 104 U.S. 604, 612, 26 L.Ed. 861; In re Lange, 18 Wall. (85 U.S.) 163, 177, 21 L.Ed. 872. The law imposes an obligation on the debtor to restore to the appellant the benefits it has received from the wrongful servicing. Baltimore & O. R. Co. v. United States, 279 U.S. 781, 786, 49 S.Ct. 492, 493, 73 L.Ed. 954; In re Lilyknit Silk Underwear Co. (C.C.A.2) 73 F.(2d) 52.

After revocation of the agency, neither a court order nor any circumstance which is related here reinstated the former agency of the appellees. It required the approval of all the bondholders and the trustee (this appellant) to do so. It accorded the appellees no right whatever to continue the agency. Restatement of the Law of Agency, §§ 451–457.

The conferring of a benefit on the principal—this appellant and the bondholders—after the revocation of the agency, is not a sufficient basis to recover for the services rendered thereafter. People, by Van Schaick v. Lawyers' Title & Guaranty Co., 265 N.Y. 20, 191 N.E. 720. Moreover, the services were not accepted but, on the contrary, the appellant did all it could to compel the appellees to turn over to it as trustee the work of servicing the collateral which was being wrongfully performed by the appellees, and no obligation therefor can be established. However, the trustees-appellees acted in good faith and pursuant to above order in performing their services, and no personal responsibility attaches.

But it is argued that another District Judge who was in charge of the reorganization of the Prudence-Bonds Corporation was applied to for compensation for this service and that he made an order permitting the appellees to service this collateral. An order, made June 29, 1934, authorized the trustees of the Prudence-Bonds Corporation "to continue the present servicing arrangement," which was by the debtor; but this order does not authorize the debtor's trustees subsequently appointed in its own reorganization to

act thereunder with expectation of pay during the period in question.

We are referred to Prudential Ins. Co v. Liberdar Holding Co. (C.C.A.) 72 F.(2d) 395; Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457, and State of Missouri v. Angle (C.C.A.) 236 F. 644. In the Liberdar Case the title company was the absolute owner of a number of bonds and mortgages and merely deposited them with the bank and borrowed against the same and issued certificates with a direct obligation to pay, and the bonds and mortgages constituted collateral security for the payment of the title company's obligations. It reserved the right to withdraw and substitute other collateral. An action was brought against Liberdar, a subsidiary of the title company by a creditor, and equity receivers were appointed for its property. The superintendent of insurance, as rehabilitator, applied to the court for an order directing Liberdar to execute conveyances to the title company on the ground that it held title as constructive trustee. We held there was no constructive trust of the real property. The claim of the superintendent of insurance that the title company and its certificate holders were entitled to the income from the property from the time Liberdar took title was denied. We held it had no interest in the rents on any theory because the petitioner's claim to such rents fell with its underlying claim that he was entitled to a deed at the moment of the purchase by Liberdar on foreclosure. We held that, after default, the title company was bound to apply for a receiver of the rents of any mortgage that was itself in default and the certificate holders could treat it as a trustee for them of that power. The receivers of Liberdar were trustees of income from the property for the collective benefit of the pledgor, the title company, and the pledgees, the certificate holders. Unlike the instant case, the receivers were not trustees forbidden to act ‚and had the absolute right and authority, being rightfully in possession of the mortgaged property belonging to Liberdar, to collect the income until a receiver in the foreclosure action was appointed. In the instant case, the appellant had the absolute right, when the debtor defaulted on its guaranty, to terminate the agency, and these rights were actually terminated prior to the section 77B proceedings, and appellant then had the sole right to manage the collateral. In the Liberdar Case, the

receivers were not acting under any terminable agency right contained in any agreement, but were in possession of the properties of the owner, Liberdar, and had the same right until a receiver was appointed in foreclosure.

In Harkins v. Brundage, supra, the question presented was that of comity: which court, state or federal, had assumed jurisdiction. A fraud had been practiced upon the state court in delaying the proceedings therein, and it was held that the federal court as a matter of courtesy to the state court should surrender possession to it. In State of Missouri v. Angle, supra, the question presented was whether the bankrupt owned a private banking institution, because, if it did not, then the possession of the state court proceeding was a proper possession and the federal trustees were not entitled to possession of the bank's property. After considering the statutes of Missouri as to whether a private bank was a corporation, it was held that the state court was without authority to administer any portion of the assets and could not award compensation to its officers for performing part of the labor.

Appellees, therefore, were not entitled to retain the moneys withheld.

Order reversed.