In re PRUDENCE BONDS CORPORATION
(CHEMICAL BANK & TRUST CO.,
Appellant). *
No. 351.

Circuit Court of Appeals, Second Circuit.
Aug. 8, 1935.

MANTON, Circuit Judge, dissenting.

See, also, 79 F.(2d) 212; 75 F.(2d) 262; 77 F.(2d) 328.

Miller, Boston & Owen, of New York City (Harold H. Corbin and Edward J. Bennett, both of New York City, of counsel), for debtor.

Cotton, Franklin, Wright & Gordon, of New York City (Paul W. Williams and Robert M. Becket, both of New York City, of counsel), for appellant Chemical Bank & Trust Co.

Weinstein & Levinson, of New York City (Frank Weinstein and Samuel J. Levinson, both of New York City, of counsel), for creditors appellants.

Powell & Ruch, of New York City (Frederick J. Powell, of New York City, of counsel), for appellee Prudence Bonds Corporation.

Archibald Palmer, of New York City, and Jacob A. Freedman, of Brooklyn, N. Y. (Archibald Palmer, Sydney Basil Levy, and Harry D. Glicksman, all of New York City, of counsel), for intervening creditors appellees.

Cullen & Dykman, of Brooklyn, N. Y. (Ralph W. Crolly, of Brooklyn, N. Y., of counsel), for intervener-appellee Brooklyn Trust Co.

James T. Heenehan, of New York City (Gerald Donovan and D. Basil O'Connor, both of New York City, of counsel), for George W. Egbert, Superintendent of Banks of New York, amicus curiæ.

George C. Wildermuth, of Brooklyn, N. Y., for Charles H. Kelby and Clifford S. Kelsey, as trustees of Prudence Bonds Corporation.

Kaufman, Weitzner & Celler, of New York City (Thomas Cradock Hughes, of Brooklyn, N. Y., of counsel), for trustees of the Prudence Company, Inc., debtor, amici curiæ.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a proceeding under section 77B of the Bankruptcy Act (11 USCA § 207) for the reorganization of an issue of obligations of the Prudence Bonds Corporation, known as first mortgage collateral bonds, fifteenth series. The debtor has outstanding eighteen issues of its bonds of a principal amount aggregating over $50,000,000 and fifty-four issues of so-called participation certificates aggregating a like amount. In the fifteenth series the debtor deposited with the United States Mortgage & Trust Company, of which Chemical Bank & Trust Company is the successor, certain first mortgages on real estate to secure the issue. The bonds of the debtor were sold to the public and were guaranteed as to principal and interest by Prudence Company, Inc., which was affiliated with Prudence Bonds Corporation, inasmuch as the stock of each was held by New York Investors, Inc.

Because the owners of the mortgaged properties were unable to meet the interest and other payments called for by the mortgages underlying the fifteenth series of bonds, the debtor became unable to meet the payments of interest on that series. The Prudence Company, Inc., which guaranteed the series, was taken over by the superintendent of banks of the state of New York, but his authority was afterwards supplanted through a proceeding under section 77B for the reorganization

of Prudence Company, Inc. Matter of Prudence Co., Inc. (C. C. A.) 79 F.(2d) 77, decided July 22, 1935. The total principal amount outstanding of the fifteenth series is $4,650,700, and the collateral behind the bonds as of November 1, 1934, consisted of approximately $4,430,000 of real estate mortgages, $5,400 of Home Owners' Loan Corporation bonds, and approximately $259,000 in cash. The debtor filed a plan for the reorganization of the foregoing series which has since been amended.

Upon petition of the debtor, the District Court issued an order to show cause with notice by publication to creditors and stockholders and with notice by mail to all known holders of the bonds of the fifteenth series, to Chemical Bank & Trust Company as trustee under the trust indenture, to the trustees of the debtor, and to the attorneys for the parties who had intervened, directing them to show cause on a day fixed why a plan of reorganization to be then proposed with respect to the series should not be considered and an order should not be made (a) providing that the plan had been duly proposed; (b) referring consideration of the same and all objections filed thereto and any changes or modifications thereof to a special master; and (c) dividing the creditors and stockholders of the debtor into classes according to the nature of their respective claims and interests and determining that the interest of stockholders and creditors other than holders of bonds of the series were not affected by the plan within the meaning of section 77B. Thereafter on December 18, 1934, the District Court made an order that the amended plan of reorganization dated December 6, 1934, and proposed by the debtor had been duly proposed in accordance with the requirements of section 77B, that the consideration of the plan and of any objections filed thereto and of any changes proposed therein be referred to a special master, and that the claims of stockholders of the debtor and of creditors other than holders of first mortgage collateral bonds, fifteenth series, were not affected by the plan of reorganization within the meaning of section 77B.

The making of the order was objected to on behalf of the Chemical Bank & Trust Company, the successor trustee holding the collateral under the trust indenture, on the ground that a separate reorganization of one series of obligations of the debtor, such as the proposed plan involved, was not permissible under the provisions of section 77B. The Brooklyn Trust Company, which had been allowed to intervene, was served with notice of appeal, has submitted a brief in support of the position taken by Chemical Bank & Trust Company, and has objected to the order for other reasons. While we shall make some reference to the argument of the Brooklyn Trust Company, we can see no justification for its taking a position in opposition to the order, since it neither opposed it in the District Court nor has taken an appeal. The superintendent of banks has filed a brief as amicus curiæ in which he claims that the court had no power to reorganize the separate issue of bonds and that it should be dealt with by the superintendent under the provisions of the Schackno Act (Laws N. Y. 1933, c. 745). He neither intervened nor attempted any appeal, and, as matters stand, no creditor is seeking to review the action of the District Court.

The general objection of appellant to the plan for series fifteen is that section 77B contemplates a complete reorganization of the debtor and not the adoption of a series of separate plans of reorganization such as the present proceeding involves. Appellant adverts to the fact that again and again the word "plan" rather than the word "plans" is used in the statute, and that the act nowhere in terms authorizes a series of plans. This cannot be denied, and it is probably true that Congress did not have in mind the adoption of a series of plans when section 77B was enacted. It is nevertheless true that, in the kind of situation which confronts us, a plan that would cover all eighteen series of bond issues having different trustees and different collateral would be quite impracticable. The necessity of dealing simultaneously and in a single plan with bondholders whose bonds are secured by an aggregation of mortgages differing greatly in actual and potential value raises almost insurmountable difficulties in any experienced mind. The security for one series, owing to local real estate conditions, may increase or decrease greatly in value as compared with the security for another while the proceeding for reorganization is going on,

and this fluctuation may render a plan dealing with a great number of properties securing different classes of owners impracticable, as well as unfair. Moreover, it would seem to be hard to satisfy one class of bondholders if the debtor was offering more to another class, even though both offers might be fair because the security for the bonds differed in value. It is quite true that this difficulty has existed, at least to some extent, in the case of railroad reorganizations where there were mortgages having different degrees of priority or covering properties of different values. We do not say that in the present case the difficulties of a single plan might not be overcome, but the fact that they have existed in some railroad receiverships would seem to be no reason for not obviating them in a proceeding under section 77B. Undeniably they are most serious, and because of the large number of issues and other complexities might become insurmountable.

We think the debtor and its creditors have demonstrated the practical advantage, if not necessity, of proposing plans for the reorganization of its different classes of bonds seriatim rather than attempting to deal with them all at once. Had Congress thought of the difficulties inherent in the situation, we have little doubt that it would have more clearly provided for the kind of reorganization here proposed, but we think the terms of the present act adequate for that purpose where circumstances demand it. There is nothing in section 77B precluding a series of reorganizations, and subdivision (b) (10), 11 USCA § 207 (b) (10), provides that a plan of reorganization "may deal with all or any part of the property of the debtor and may include any other appropriate provisions not inconsistent with this section." It is argued that this provision was only inserted to enable a debtor to except certain portions of its assets from a plan which contained the only reorganization which it ever proposed to carry out. But it is hardly questioned that a plan might be proposed omitting entirely the fifteenth series and the interest of the debtor in the collateral securing the same and leaving the equity of the bondholders therein just as it stands. We cannot think it makes any difference whether the collateral of series fifteen is omitted from a plan of reorganization which embraces the other property of the debtor or is dealt with in a separate plan; and we cannot see that section 77B (b) (10) needs to be limited to cases where there can be but one general plan. So long as the plan proposed is fair to all creditors, the liberal interpretation, which we have heretofore given the statute in order to carry out its beneficial intent, seems to justify any series of plans which the needs of a given situation may demand.

The appellant makes the objection that subdivision (b) (3), 11 USCA § 207 (b) (3), requires that the plan shall provide for the payment in cash of all costs of administration and other allowances made by the court, and says that a separate plan cannot conform to this requirement. This view is too technical. The costs under the proposed plan are to be paid from the collateral and its earnings applicable to the bondholders of the fifteenth series. The word "all" in the subdivision need not be read as relating to costs of administration other than those involved in the plan proposed.

It is also objected that, if a series of plans be adopted, no one of them can conform to subdivision (b) (7), 11 USCA § 207 (b) (7), which provides that, in case any creditor or stockholder or class thereof shall not be affected by the plan, it shall specify the creditors or stockholders or classes thereof not affected and contain such provisions with respect thereto as may be appropriate, and, in case any controversy shall arise as to whether any creditor or stockholder or class thereof shall be affected, the issue shall be determined by the judge. We can see no force in this contention, and it seems entirely met by the provision in the order for a determination of such classes.

Finally, appellant argues that separate plans are inconsistent with section 77B (d), 11 USCA § 207 (d), because the latter subdivision requires that, before a plan can be submitted by a creditor, it must have been approved by creditors constituting not less than 25 per cent. of any class of creditors and not less than 10 per cent. of all claims against the debtor. From this appellant reasons that a series of plans imposes upon the creditors who wish to propose alternative plans difficulties so great as to make it unlikely that such a series is within section 77B. We cannot see that this argument is entitled to much weight. In the first place,

there is nothing to prevent creditors from proposing a general plan at any time and the requirement of subdivision (d) in respect to such a plan is inherent in the statute and in its entire treatment of creditors who desire to propose an alternative plan of reorganization. Furthermore, any creditor who is not satisfied with the plan may always object to it at the hearing and has throughout the protection of the court in seeing that any plan proposed is equitable. This is a complete safeguard against the adoption of an undesirable plan. Appellant's argument is only that multiplying the requirements of creditors who may desire to propose alternative plans increases their burdens. This is so, but is inherent in the statute, and we believe is no sufficient answer to the advantages which in some circumstances may be gained by the adoption of separate plans.

The bonds of the series sought to be reorganized are extended as to payment of principal and scaled down as to payments of interest. Therefore there can be no prejudice to other creditors, whether secured or unsecured. The plan as amended proposes a final plan of reorganization which will embrace the general assets and liabilities. This would seem to protect both the bondholders of series fifteen and all others similarly situated and general creditors as well.

It is unnecessary for us at this time to determine the status of the fifty-four separate security issues of first mortgage participation certificates, for they are not involved in the proposed plan, and the record does not show whether the debtor has any interest in the mortgages against which these participation certificates were issued. See opinion of Swan, J., in Matter of Prudence Bonds Corporation (Ex parte Manhattan Co., as Depository, Brooklyn Trust Co., as Trustee), 79 F.(2d) 212, filed herewith. It is enough to say that we hold that a separate reorganization of series fifteen is authorized by the act and that the consideration of a separate plan was within the discretion of the District Court.

The Brooklyn Trust Company contends that, even if the proposal of a separate plan of reorganization for series fifteen might under some circumstances be permissible, it cannot be allowed in this case because, when the debtor defaulted in the payment of interest upon its bonds, it lost all rights of ownership in the collateral as well as rights to administer the same. This it based on the terms of the trust, which is not part of the record, and upon the decision of the Court of Appeals of New York in President, etc., of Manhattan Co. v. Prudence Co., Inc., 266 N. Y. 202, 194 N. E. 408. There the deed of trust provided that the agency to collect principal and interest on securities deposited under the trust agreement was terminated by failure to pay interest on outstanding bonds, and that the obligor and guarantor might no longer hold, as their own, interest upon securities to which they had no legal title, collected by them after the conditions upon which the agency had been predicated had been defeated by law. That decision, however, only governed the rights of the contracting parties inter sese. Here the situation is quite different. The debtor has an equity because, under the most unfavorable construction of the agreement, it claims to be entitled to any surplus that may be left after the satisfaction of the liens upon the collateral. Under a plan of reorganization it would be entitled to have its interest in, and the liens upon, this equity determined, and to have such adjustments made in the plan as are fair to the parties. The rights of the Chemical Bank & Trust Company to administer the collateral because of the default of the debtor may be terminated as were similar rights of a trustee under our decision in Re Central Funding Corporation, 75 F.(2d) 256. We went even further in the case of In re Mortgage Securities Corporation, 75 F.(2d) 261, and directed the trust company there to turn over collateral which secured bonds issued by the debtor, even though the latter had conveyed away its equity of redemption prior to the institution of the reorganization proceedings. It is therefore unimportant whether the claim of the Brooklyn Trust Company that Prudence Company, Inc., and not Prudence Bonds Corporation, owns the collateral be correct or not. If Prudence Bonds Corporation owns it, In re Central Funding Corporation, supra, would negative the position of the trust company. If it does not, the contention of the trust company is completely met by In re Mortgage Securities Corporation, supra. We repeat, however, that the Brooklyn Trust Company has no standing to question the validity of the order of the court below, not only be-

cause it is not an appellant, but because the facts which it urges as conclusive of the correctness of its contention are not in the record. Its rights in respect to the reorganization of another similar series of collateral bonds of Prudence Bonds Corporation are fully dealt with in an opinion by Judge Swan rendered upon an adequate record and filed herewith.

Order affirmed.

MANTON, Circuit Judge, dissenting with opinion.

MANTON, Circuit Judge (dissenting).

Prudence Bonds Corporation, the debtor, is a New York corporation organized under the Stock Corporation Law. When the petition in bankruptcy was filed, it had outstanding eighteen issues of its bonds in a principal amount aggregating over $50,000,000, and fifty-four issues of participation certificates in an aggregate principal amount of over $50,000,000. The Chemical Bank & Trust Company is the successor trustee under a trust agreement, dated October 1, 1928, securing the issue of bonds of the debtor known as first mortgage-collateral bonds, fifteenth series. There are outstanding and secured by this trust agreement, bonds in an aggregate principal amount of $4,650,700, which are valid and subsisting obligations of the debtor in the hands of persons and corporations who are holders for value. The fifteenth series bonds were secured by collateral, in the form of bonds and mortgages upon real estate, pledged with the appellant as successor trustee. The bonds are guaranteed as to payment of principal and interest by the Prudence Company, Inc. Both debtor and guarantor are in default in payment of interest on the fifteenth series bonds from November 1, 1933. These defaults continue except for certain partial payments which have been made on account of installments of interest which became due November 1, 1933. Under the terms of the trust agreement, the principal of all the outstanding bonds is declared to be due and payable, and it has not been paid by the debtor or its guarantor.

The debtor filed its petition in this proceeding, under the provisions of section 77B of the Bankruptcy Act (11 USCA § 207), on June 29, 1934. On October 11, 1934, the appellant intervened in the proceeding. November 27, 1934, on the petition of the debtor, the appellant was directed to show cause, as well as all creditors and stockholders of the debtor, why a plan of reorganization with respect to an issue of bonds of the debtor "known as its First Mortgage-Collateral Bonds, Fifteenth Series," should not be heard and considered, and why an order should not be made and entered providing that the plan was "duly proposed in accordance with the requirements of section 77B of the National Bankruptcy Act." After a hearing, an order was entered reciting that the plan was so duly proposed in accordance with section 77B of the Bankruptcy Act. The order referred the plan of reorganization to a special master for consideration of objections thereto. When this appeal was taken, the required consents to the amended plan had not been obtained, and the special master had not made a report.

The question presented by this appeal is whether the court erred in entering the order that the plan was "duly proposed in accordance with the requirements of section 77B of the National Bankruptcy Act."

The appellant argues that the National Bankruptcy Act does not authorize or contemplate several separate and independent plans of reorganization which may be separately considered, confirmed, and adopted. It contends that the proceeding by a separate plan of reorganization as to this part of the debtor's property only, namely, the fifteenth series bonds, entailing a modification of the contract rights of the bondholders, so carried out as planned, would be invalid and unauthorized, and the validity of the modified bonds and their marketability would be seriously impaired.

Nowhere in the provisions of section 77B is there any language which sustains the claim that there is an authorization of several separate plans of reorganization. Wherever plans of reorganization are referred to in the several sections, the language is definite, indicating that the machinery and procedure set up thereby was intended to provide for one plan of reorganization—a single comprehensive plan. Subdivision (a), 11 USCA § 207 (a), authorizing a corporation to file a petition, refers to the right of the debtor to act if "it desires to effect a plan of reorganization," and throughout this

section one plan of reorganization is contemplated and referred to. Subdivisions (f), (g), and (h), 11 USCA § 207 (f, g, h), dealing with the winding up of a reorganization proceeding and the confirmation and adoption of a reorganization plan, are equally clear in referring to but one plan. Subdivision (h), 11 USCA § 207 (h), provides that "Upon the termination of the proceedings a final decree shall be entered discharging the trustee or trustees, if any, making such provisions as may be equitable, by way of injunction or otherwise, and closing the case." Throughout the language contemplates but one plan, one approval by the creditors and the court, and one proceeding for final disposition. Subdivision (b) (10), 11 USCA § 207 (b) (10), provides that the plan may deal with all or any part of the property of the debtor. This unquestionably was not intended to permit dealing with different parts of the debtor's property in different plans. It must be read in conjunction with subdivision (b) (1), 11 USCA § 207 (b) (1), in which case its meaning becomes clear. A plan need not modify the rights of creditors generally, but may be limited to a particular class of creditors and the rights of other classes remain undisturbed, and such plan may deal with only a part of the debtor's property. But this is not permitting the property of the debtor to be dealt with by several separate plans each dealing with parts of the property. The Report of the House Judiciary Committee, adopted by the Senate Judiciary Committee, indicates that but a single and comprehensive plan of reorganization was contemplated.[1]

Subdivision (b) specifies conditions which a plan of reorganization within the meaning of section 77B must provide and others which it may provide. Some of those which must be provided in a plan can only be provided for in a general plan. Subdivision (b) (3), 11 USCA § 207 (b) (3), requires that the plan shall provide for the payment in cash of all costs of administration and other allowances made by the court. This could not be provided for in several separate plans, as the amounts could not be determined until all the other proposed separate plans have been confirmed or are ready for confirmation. Subdivision (b) (7), 11 USCA § 207 (b) (7), provides that the plan shall, in case any creditor or stockholder or class thereof shall not be affected by the plan, contain provisions with respect to unaffected creditors or stockholders as may be appropriate. To comply with this requirement of the statute, a separate plan must contain the provisions which are to be made with respect to all creditors. This could not be done if separate plans were to be confirmed at different times. Subdivision (b) (7) clearly contemplated a single general plan.

Subdivision (b) (8), 11 USCA § 207 (b) (8), provides that the plan shall specify which claims are to be paid in cash in full. A separate plan proposed for confirmation prior to the confirmation of other proposed plans could not contain such a specification, because until a general plan is promulgated, the amount of claims which will have to be paid in cash cannot be ascertained. Subdivision (b) (9), 11 USCA § 207 (b) (9), provides that a plan shall provide adequate means for the execution of the plan, including the satisfaction and modification of liens, indentures, or other similar instruments. This language is general and inclusive. It would seem to mean that every plan must show to the creditors what changes and modifications are being made in the rights of all creditors affected by the reorganization. Creditors of one class have an interest in knowing what treatment is accorded to another class. Their rights might well be affected. Bankruptcy con-

---

[1] C. C. H. Bankruptcy, p. 857 et seq.

"This bill if enacted will result in reducing the cost of reorganizing corporations, entitled to its benefits in the following ways, provided, of course, a plan of reorganization is proposed and accepted. * * * " (857.)

"The means specified in subdivision (b) for carrying out a plan includes as one of the means the amendment of the charter of the debtor." (858.)

"The plan when confirmed and carried out will set forth the capitalization of the reorganized company and there must be no uncertainty as to its finality." (863.)

Report of House Judiciary Committee was adopted by the Senate Judiciary Committee. The report, for the most part, states the provisions of the bill substantially as enacted in the form of section 77B.

templates an equitable distribution of the bankrupt's property, and the same principle underlies the procedure in section 77B.

Subdivision (d), 11 USCA § 207 (d), indicates the need of a general plan. This subdivision requires that, before a plan can be submitted by a creditor, it must have been approved by creditors constituting not less than 25 per cent. in amount of any class of creditors and not less than 10 per cent. in amount of all claims against the debtor. If several plans were to be proposed for one debtor, a creditor cannot submit an alternative plan without the approval required by this subdivision including that of at least 10 per cent. of all the claims against the debtor.

From the language employed, it is inconceivable that Congress intended that here seventy-two groups might propose seventy-two plans and that each should canvass for consent from holders of other separate groups. A plan of reorganization which 25 per cent. of any class of creditors might propose should be of such a general character as to warrant the further requirement of the consent of 10 per cent. of all claims against the debtor.

Again, subdivision (c), clause (8), 11 USCA § 207 (c) (8), provides that, if a plan of reorganization is not proposed or accepted within such a reasonable time as the judge may fix or, if proposed and accepted, is not confirmed, such period may be extended or the proceeding dismissed or the judge may direct that the estate be liquidated. It is impossible that there should be reorganization of part of the debtor's property and liquidation of the balance. Again, it was not contemplated that there should be some seventy-two hearings, objections, and reports, and separate orders confirming seventy-two separate plans of reorganization of one corporation.

Moreover, an examination of the plan proposed here shows no necessity for a separate plan of reorganization for each of the obligations of this debtor. Full protection can be accorded as to any part of the debtor's property by appropriate orders entered therefor, without separate plans of reorganization being proposed and approved.

The order should be reversed.