PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, as Trustee, Appellant, *v.* THE PRUDENCE COMPANY, INC., et al., Respondents.

(Argued January 7, 1935; decided January 24, 1935.)

*J. M. Richardson Lyeth* and *John P. Allee* for appellant. Defendants may not collect, and hold as their own, interest upon securities to which they have no legal title which has been collected by them as agents, after the conditions upon which the agency was predicated have been defeated by law. (*Matter of People [Lawyers Title & Guaranty Co.*], 265 N. Y. 20; *Matter of People [New York Title & Mortgage Co.*], 265 N. Y. 30.)

*Ralph W. Crolly* for Brooklyn Trust Company et al., *amici curiæ.* The judgment should be reversed and the plaintiff's motion for judgment on the pleadings granted. (*Matter of People [Lawyers Title & Guaranty Co.*], 265 N. Y. 20; *Matter of People [New York Title & Mortgage Co.*], 265 N. Y. 30.)

*Alexander B. Siegel* for Prudence-Bonds Corporation, respondent. The plaintiff trustee has no right to demand that moneys collected and earmarked by the defendant guarantor for a particular purpose pursuant to regulations made by the State Banking Department should be devoted to a different purpose. (*Moses v. Guaranteed Mortgage Co.*, 264 N. Y. 476; *Matter of People [Title & Mortgage Guarantee Co.*], 264 N. Y. 69; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *People* v. *Nebbia*, 262 N. Y. 259; 291 U. S. 502; *Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39; *Hoskin* v. *Long Island Loan Co.*, 139 App. Div. 258; 203 N. Y. 588; *Long Island Water Supply Co.* v. *Brooklyn*, 166 U. S. 685.) The guarantor is not legally in default in the payment of principal or interest and the trustee may not exercise rights based solely upon an alleged default in the payment of principal or interest. (*Moses* v. *Guaranteed Mortgage Co.*, 264 N. Y. 476.)

*Godfrey P. Schmidt, Raymond D. Thurber* and *James T. Heenehan* for Joseph A. Broderick, Superintendent of

Banks, as liquidator of The Prudence Company, Inc., respondent. The questions raised by plaintiff became academic when the Superintendent of Banks was exclusively invested with the very powers claimed by plaintiff. (*Metcalfe* v. *Union Trust Co.*, 181 N. Y. 39.)

LEHMAN, J. The Prudence-Bonds Corporation, hereinafter referred to as the obligor, executed a deed of trust for the purpose of securing a series of mortgage bonds. The plaintiff is the trustee named in the deed of trust. The trust agreement recites that the obligor has assigned to the trustee bonds, mortgages and other securities and cash set forth in the agreement and that " the trustee shall have and hold such bonds, mortgages and other securities and cash upon the trusts hereby created for the equal and *pro rata* benefit and security of the holders of Prudence-Bonds, Fifth Series, issued and to be issued hereunder and to secure the payment of the principal and the interest of said bonds, and for all the other uses and purposes and upon the terms and conditions herein declared and expressed." The bonds issued pursuant to the trust agreement and sold to the public were guaranteed by Prudence Company, Inc., hereinafter referred to as the guarantor. Until March, 1933, there was no default by the obligor or guarantor of any of the terms of the trust agreement. Until default the obligor retained definite rights specified in the agreement in connection with the bonds and mortgages which constituted the trust fund. Amongst other things it was provided that " at any time when the aggregate principal amount of the Trust Fund is not less than the principal of all Prudence-Bonds then issued and outstanding hereunder, and so long as there shall not exist any event of default under which the Trustee may take action as hereinafter provided, the Corporation or The Prudence Company, Inc., shall *collect and retain* all payments of interest and principal on the securities constituting the Trust Fund subject to the provisions of paragraph (i), Section 1, Article III hereof."

That paragraph provides for the payment to the trustee of an amount "equal to the aggregate amount of all payments collected on account of *principal* of any securities in the trust fund during the preceding calendar month." It thus appears that at least until March, 1933, the obligor or the guarantor had the right not only to collect interest on the securities in the trust fund, but to retain such interest.

The "events of default" under which the trustee may take action (enumerated in article IV), include: "Default in payment of any installment of interest upon any Prudence-Bond issued hereunder." Mere failure to pay interest does not, however, give immediate right or remedy to the trustee or any bondholder or deprive the obligor or guarantor of any rights conferred by the agreement for it is provided: "Inasmuch as The Prudence Company, Inc., has assigned to the Corporation various bonds, mortgages and other securities, and has received or is to receive in exchange therefor Prudence-Bonds of an equal aggregate principal amount, and has determined to guarantee to the holders of all Prudence-Bonds at any time issued and outstanding hereunder for their better protection, the payment of the interest thereon when due and the payment of the principal thereof within eighteen months after the same shall have become due according to their terms, it is distinctly understood and agreed by and between the parties hereto that no rights or remedies under this Article shall be exercised by the Trustee or by any bondholder, nor shall the Corporation or The Prudence Company, Inc., be prevented from exercising any of the rights conferred upon them or either of them by this Agreement, unless and until said The Prudence Company, Inc., shall have failed to fulfill some obligation in said guarantee contained, anything in this Agreement or in said Prudence-Bonds contained to the contrary notwithstanding."

On April 1, 1933, and October 1, 1933, semi-annual installments of interest became due and payable upon

bonds outstanding on those dates. The obligor and guarantor failed to pay the whole of the said semi-annual installment of interest on the bonds due and payable on April 1, 1933, and failed to pay any part of said semi-annual installment of interest on the bonds due and payable on October 1, 1933. Because of such failure, the trustee, on January 31, 1934, served notice on the obligor and guarantor terminating their right to collect or retain payments on account of principal and interest on securities constituting the trust fund and made certain demands upon these defendants including a demand that they turn over to the plaintiff all moneys collected by them after March 31, 1933, on the securities constituting the trust fund. The trustee has now brought this action to compel compliance with these demands.

The answer of the defendants substantially admits the allegations, contained in the complaint, of the facts hereinbefore set forth, but the defendants plead, as an affirmative defense and counterclaim, certain regulations of the Banking Department which, they claim, preclude them from complying with the plaintiff's demands and which, they claim, permit them to continue to disburse and distribute the net income from the securities deposited only in accordance with such regulations. Both parties have moved for judgment on the pleadings. The defendants' motion has been granted and judgment entered dismissing the complaint and establishing the counterclaim of the defendants that they be permitted to continue to disburse and distribute net income from securities constituting the trust fund " pursuant to the regulations of the State Banking Board and of the Superintendent of Banks during the continuance of the emergency declared by Chapter 41 of the Laws of New York of 1933 and the acts amendatory thereof as such continuance of the emergency is defined and limited in such acts."

The guarantor is a corporation organized under the Banking Law (Cons. Laws, ch. 2) and subject to the jurisdiction

of the Banking Department. It was closed by proclamation of the President in March, 1933, before there was any default in payment of principal or interest of the bonds issued pursuant to the trust agreement. In April, 1933, it was permitted to reopen, but subject to the regulations promulgated by the Banking Department. These regulations provide, among other things, that " Payments of interest and principal due under guarantees and collateral trust bonds shall be made to the holders of such guarantees and collateral trust bonds only as thus provided; to wit: From such sums of principal and interest as shall have been received from mortgagors to and including the 15th and 30th days of each month upon the respective mortgages securing such guarantees or collateral trust bonds there shall be paid on such semi-monthly dates the interest and principal so collected less the reasonable incidental cost of the collection and disbursement of such monies and reserves for the payment of taxes if necessary for the protection of the interests of the holders of guarantees or collateral trust bonds.

" These provisions with regard to the payment of interest and principal to holders of guarantees and collateral trust bonds shall continue until modified or rescinded by the Superintendent of Banks * * *

" Otherwise than as provided in these regulations, no company shall transfer any assets or make any loans or disbursements for other than operating costs without first obtaining the approval of the Superintendent of Banks. This prohibition shall not apply to partially executed transactions."

Supplementary and amendatory regulations have thereafter been promulgated, but the prohibition remains which precludes guaranty companies from making payments of interest and principal due under guaranties and collateral trust bonds except in accordance with these regulations. We must pass upon the effect of these regulations on the rights of the parties to the trust agreement.

We have held that to meet the extraordinary conditions created by the general economic difficulties of the community, the Legislature has power to postpone enforcement of contractual obligations and even to impair, in some respects, such obligations by measures which are reasonably calculated to obviate a threatened danger to the economic welfare of the community. We have also held that the regulation of the Banking Department, which provides that payments by banking corporations of interest and principal due under guaranties and collateral trust bonds, shall be made only from such sums of principal and interest as shall have been received from mortgagors, is a reasonable regulation and that while such regulation is in effect no action may be maintained against a banking corporation to recover a stated sum pursuant to a guaranty. (*Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69; *Moses* v. *Guaranteed Mortgage Co.*, 264 N. Y. 476.) The question here is different. The plaintiff is not seeking to recover a stated sum from the guarantor. It is not even seeking to enforce the guaranty. It is seeking only to obtain moneys which the guarantor has collected pursuant to an agency created by the trust agreement to which the guarantor was not even a direct party.

The primary question presented is whether the agency to collect interest and principal on securities constituting the trust fund was terminated by the failure to pay interest on the bonds in accordance with the terms of the trust agreement. We may assume that the guarantor would have paid such interest if the Banking Department had permitted it to do so. Its failure is, then, not due to its own fault and gives rise to no present cause of action against it upon its guaranty. None the less, the conditions for the continuance of its agency to collect interest and principal on the securities in the trust fund have failed. The principal obligation has not been complied with and the guarantor failed to fulfill its obligation in

said guaranty. Title to the securities in the trust fund is in the trustee for the benefit of the bondholders. So long as interest on the bonds was paid by obligor or guarantor the trustee and bondholders were willing and agreed to permit the obligor or guarantor to collect and retain the interest on the securities which constitute collateral security for the payment of the bonds. To permit the obligor or guarantor to continue to collect and retain this interest, accruing upon the mortgage or the trust fund, when payment of interest on the bonds, secured by the trust fund, has not been made would be contrary to the intent of the parties; contrary to the language of the agreement and contrary to the dictates of justice and equity even though the guarantor is not at fault. Though, perhaps, the defendants should not be penalized for act or omission dictated by the law of the State, it is, nevertheless, clear that they may not collect, and hold as their own, interest upon securities to which they have no legal title which has been collected by them as agents, after the conditions upon which the agency was predicated have been defeated by law. So we held in *Matter of People* (*Lawyers Title & Guaranty Co.*) (265 N. Y. 20) and *Matter of People* (*New York Title & Mortgage Co.*) (265 N. Y. 30). The defendants do not even contend otherwise.

They concede frankly that the interest which they collect upon the underlying securities belongs and must be distributed to the bondholders. They maintain only that they have not lost the right to *collect* as agents for the trustee or bondholders and that the moneys when collected must be applied to payment of interest on the bonds in accordance with the regulations of the Banking Department though the trust agreement provides that such moneys shall, after default, be otherwise applied. The plaintiff maintains, on the other hand, that right to collect has been lost and that the moneys already collected must be paid over to it without any conditions.

The trust agreement provides that "moneys collected or held by the Trustee after an event of default under which the Trustee may take action as provided in this Article, shall be applied as follows: Out of such moneys, the reasonable compensation, costs and expenses of the Trustee, its attorneys and counsel shall be paid, and all taxes, assessments or liens, * * * and the surplus shall be applied to the payment of the *principal indebtedness* of all the Prudence-Bonds issued hereunder then outstanding and the *interest* accrued thereon *pro rata* without priority of principal over interest or of interest over principal or of one bond over another bond, whether such principal and interest shall at the time have become due and payable according to the terms of the bonds and coupons or not." The Superintendent of Banks has interpreted the regulation of the Banking Department as requiring application of interest received by a guaranty company to the payment of interest on the guaranteed bonds. For the purposes of this appeal we accept such interpretation. It is said that such application would be of greater benefit to the bondholders than a *pro rata* application to principal and interest. That may be true. The question, nevertheless, remains whether the bondholders have the right to require collection and distribution of interest and principal of underlying securities in accordance with the agreement made by the parties.

In this case we deal, as we have said, with interest accruing upon securities which do not belong to these defendants and which they have collected under an agency created upon conditions which have failed. Since the money in the hands of the defendants does not belong to them it must be paid to the real owners. We are not now called upon to determine whether in the present emergency some public interest may exist which would justify a legislative fiat that all moneys collected as principal or interest upon the mortgages in a trust fund which constitutes collateral security for a bond issue shall

be distributed to the bondholders in manner prescribed by the Legislature rather than the manner prescribed by the trust agreement and the contract of the parties. Here the Legislature has not so decreed and no public interest has been suggested to us which would justify so extraordinary an exercise of power. The regulation upon which these defendants rely is applicable only to certain mortgage loan companies whose business consists of the investment in, sale and purchase of, real estate mortgages and mortgage certificates guaranteed by such companies. It deals only with payments of interest and principal due *under* guaranty and collateral trust bonds and transfer of assets of such companies. Since the moneys collected by the defendants in this case do not belong to them, payment to the owners of the moneys is not a transfer of any assets of the defendants nor is it a payment of interest and principal due under a guaranty or collateral trust bond. To give to the regulation a construction broad enough to include within its scope payment of moneys not constituting an asset of a mortgage loan company, but collected and held either without right, or, at best, as agent of the trustee and bondholders, would not be justified by the language of the regulation and might make such regulation of doubtful constitutionality. When the question here is analyzed its solution becomes simple. The defendants were permitted to collect moneys on the mortgages in the trust fund only so long as interest was paid on the bonds. When interest ceased to be paid the agency ceased. It had no right to retain as its own the moneys collected thereafter, and, at least, from the date of notice to cease collecting, it had no right to continue to collect. The moneys then in the hands of the defendants, collected after failure to pay interest on the bonds, were held for the real owners. The regulations of the Banking Department precluding certain companies from transfer of assets or payment of interest in principal due under guaranties does not apply

either by its terms, fair intendment or underlying policy to moneys held by a guaranty company as agent for another. Therefore, the plaintiff, which as trustee holds title to these moneys, has a right to demand payment to it. Its disbursement of the money must be in accordance with the provisions of the trust agreement, so far, at least, as the law of this State permits.

We are told that since the judgment was entered in this action, the Superintendent of Banks has taken possession of the business and property of the guarantor pursuant to section 57 of the Banking Law of the State and that as a public officer vested with power to collect the interest and principal of the underlying securities his right is paramount to the rights created by contract. The Superintendent points to no section of the law which even purports to vest him, as liquidator or rehabilitator of a banking corporation, with any power to receive or collect interest and principal on bonds or mortgages where such collection does not constitute part of the business of the corporation and where the bonds and mortgages do not belong to the corporation. He may exercise the rights and functions of the corporation, but he cannot claim the right to collect mortgages where the corporation of which he has taken possession had no such function or right.

The judgment of the Appellate Division and that of the Special Term should be reversed and the plaintiff's motion for judgment granted, with costs in all courts to appellant payable out of the trust estate.

O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur; CRANE, Ch. J., and FINCH, J., not sitting.

Judgment accordingly.