**In re PRUDENCE CO., Inc.***

**In re AMALGAMATED PROPERTIES, Inc.**

**BROOKLYN TRUST CO. v. CALLAGHAN
et al.**

No. 167.

Circuit Court of Appeals, Second Circuit.
April 11, 1938.

The Brooklyn Trust Company filed a petition praying that the trustees of Prudence Company, Inc., a debtor in the above consolidated proceeding for reorganization under section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, be required to pay over to the Trust Company the latter's pro rata share of the sum of $14,-437.50 alleged to be in the hands of the trustees of Prudence Company, Inc., and claimed by them for services rendered by the Prudence Company, Inc., in collecting interest on a mortgage covering premises 107 West Eighty-Sixth street, borough of Manhattan, New York City. From an order granting to the Brooklyn Trust Company preferential rights in $8,250 thereof collected prior to February 1, 1935, and denying to it any right in $6,187.50 thereof collected on and after February 1, 1935, both Brooklyn Trust Company and the trustees in reorganization appeal.

Thomas Cradock Hughes and Emanuel Celler, both of New York City (Irving Rozen and Hubert Margolies, both of New York City, of counsel), for trustees of Prudence Co., Inc., debtor, appellees-appellants.

Cullen & Dykman, of Brooklyn, N. Y. (Ralph W. Crolly and Patrick J. Mahoney,

*Writ of certiorari denied 58 S.Ct. 1061, 82 L.Ed. —

both of Brooklyn, N. Y., of counsel), for Brooklyn Trust Co., appellant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On October 24, 1928, Prudence Company, Inc., was the owner of a consolidated first mortgage upon premises 107 West Eighty-Sixth street, borough of Manhattan, New York City. On August 2, 1929, Prudence Company, Inc., entered into an agreement with Realty Associates Securities Corporation reciting that Prudence Company, Inc., was the owner of a senior participation in the mortgage to the extent of $825,000, and Realty Associates Securities Corporation was the owner of a junior participation therein to the extent of $100,000. Prudence Company, Inc., assigned the mortgage to Prudence Bonds Corporation subject to the ownership agreement and the latter corporation assigned it to the Brooklyn Trust Company as depositary subject to the ownership agreement. Simultaneously certificates in the senior participation of $825,000 (known as the 107 West Eighty-Sixth Street Corporation Certificate Issue) were issued in the name of Prudence Bonds Corporation, delivered to the Prudence Company, Inc., and sold by the latter to the public with its guarantee of principal and of interest at the rate of 5½ per cent. per annum. The mortgage provided for payment of interest at the rate of 5½ per cent. per annum. There was thus no differential between the interest payable by the mortgagor under the mortgage and the amount payable to the holders of the certificates in the senior participation in the bond and mortgage. The consolidated first mortgage was thereafter foreclosed in respect to the junior participation and the premises were conveyed to Amalgamated Properties, Inc., a wholly owned subsidiary of Prudence Company, Inc., on January 28, 1932, subject only to the senior participation held by Brooklyn Trust Company. On February 7, 1934, Amalgamated Properties, Inc., executed an assignment of rents and mortgagee in possession instrument to Prudence Company, Inc., effective as of March 4, 1933. The collections under the assignment of rents after the deduction of operating expenses and taxes exceeded the interest requirements in the senior participation of $825,000 in the bond and mortgage.

Under the provisions of the certificates the Prudence Company, Inc., was authorized to look after the mortgage and collect the interest from the mortgagor and it did this without charge up to March 3, 1933. From March 4 to 16, 1933, during the so-called Banking Holiday, Prudence Company, Inc., and other guarantee corporations, were closed under the proclamation of the Governor of New York. On March 16 it resumed business subject to regulations of the State Banking Board and continued to operate under those regulations until September 29, 1934, when the New York Superintendent of Banks took possession of its business and property. The Banking Board, by its regulations of March 16, 1933, provided that payments of interest due under guarantees and collateral trust bonds should be made to the holders of such guarantees "less the reasonable incidental cost of the collection and disbursement of such moneys." The New York Superintendent of Banks who, on September 29, 1934, took possession of the business and property of Prudence Company, Inc., under section 57 of the New York Banking Law, Consol.Laws N.Y. c. 2, continued in possession until February 1, 1935, when the petition for reorganization under section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207 and note, was approved by the District Court and the trustees in reorganization were appointed. Under section 4 of chapter 745 of the New York Laws of 1933, Unconsol.Laws, § 1799, the Superintendent was authorized with respect to any bonds, mortgages, or other securities held by guarantee corporations or against which any mortgage investments had been issued (a) to collect the interest and principal, (b) to deduct from any sums collected "a reasonable amount to cover the costs and expenses of any such collection," and (c) to distribute the balance to the holders of such mortgage investments.

From March 4, 1933, to September 29, 1934, Prudence Company, Inc., earmarked all collections upon mortgages securing certificate issues and retained them in special "agency accounts." Out of these "agency accounts" it paid taxes, insurance premiums, and repairs on such of the mortgaged properties as it operated under assignments of rent and from time to time made distributions to certificate holders on account of interest due under its guar-

antees. Upon making the distributions to certificate holders, and as compensation for its services to them, it withdrew from the special agency accounts and deposited in its general corporate account one-tenth of the net income collected upon the mortgage securing the particular certificate issue. This practice adopted by Prudence Company, Inc., after March 4, 1933, was followed by the Superintendent of Banks after he went into possession on September 29, 1934, and continued by him until February 1, 1935, when the trustees in the section 77B proceeding took over the business. The fees set apart by the debtor and the Superintendent prior to February 1, 1935, from net collections of interest on the mortgage with which we have to deal amounted to $8,250.

Pursuant to an order of the District Court made on August 16, 1935, the trustees in reorganization deposited 10% of their net collections of interest upon the mortgage in question in a special agency account and distributed the balance of net collections to the certificate holders. They still retain this 10 per cent. to cover compensation to be fixed by the court for services in attending to the mortgage. The 10 per cent. retained by the trustees amounts to $6,187.50.

Brooklyn Trust Company holds certificates in the mortgage on 107 West Eighty-Sixth street, aggregating $375,000 and filed a petition for payment to it by the trustees of its share of the $8,250 and the $6,187.50 respectively reserved for payment of compensation for the so-called "servicing" of the mortgage. This share would amount to 5/11 or the proportion which its $375,000 of certificates bears to the whole $825,000 certificates issued and outstanding. The District Court held that the petitioner was entitled to a preferred claim for 5/11 of the $8,250 in so far as it could show, under the equitable rules for "tracing" funds, that the sums deducted prior to February 1, 1935, for compensation had augmented the assets now in the hands of the trustees, and that in so far as this could not be shown, it was entitled to a general claim for 5/11 of $8,250, or to such part of it as was not traced. The court denied the petition in so far as it sought to reach 5/11 of the $6,187.50 now in the hands of the trustees.

In allowing the claim to 5/11 of $8,250 (either as a preferred or general claim) the court rejected the contention of the trustees that Prudence · Company, Inc., was unauthorized by the regulations to render services to certificate holders without compensation and that the rendition of services without compensation would result in a preference to the certificate holders of the particular issue. In denying the claim to 5/11 of the $6,187.50 in the hands of the trustees the court acted upon the theory that after the institution of the reorganization proceedings the allowance of compensation for services rendered for the benefit of certificate holders in this issue would constitute a preference in their favor.

The Trust Company has appealed from the order as a whole and the trustees have appealed from that part of it which allowed either a preferred or general claim based on the retention of the $8,250 for services prior to February 1, 1935.

We think that the court was right in its disposition of the claim to 5/11 of $8,250. The items which the debtor and the Superintendent of Banks deducted are no longer held as a separate fund but went into the general assets of the debtor. Under such circumstances the claimant can stand in no better position than a general creditor unless it can trace the moneys or some part of them. The trustees say that the debtor made these deductions under a regulation and that the Superintendent made them under Chapter 745 of the Laws of 1933, as amended, Unconsol.Laws, § 1796 et seq., each of which provided for compensation. It is contended that because of this the trustees are entitled to retain the moneys and that the certificate holder has no right either as a preferred or general creditor to prove a claim. The reasoning is not persuasive. In President, etc., of Manhattan Company v. Prudence Company, 266 N.Y. 202, 212, 194 N.E. 408, 411, the New York Court of Appeals in dealing with a similar situation remarked that: "Since the moneys collected by the defendants * * * do not belong to them, payment to the owners of the moneys is not a transfer of any assets of the defendants, nor is it a payment of interest and principal due under a guaranty or collateral trust bond. To give to the regulation a construction broad enough to include within its scope payment of moneys not constituting an asset of a mortgage loan company, but collected and held ei-

ther without right, or, at best, as agent of the trustee and bondholders, would not be justified by the language of the regulation and might make such regulation of doubtful constitutionality."

Chapter 745 of the Laws of 1933, as amended, Unconsol.Laws § 1796 et seq., also fails to reach a situation like the present where there was no differential between the amount payable under the mortgage and the amount payable to the participation certificate holders under the guarantee. It perhaps permitted deductions out of payments on guaranteed mortgages by the Superintendent for his official benefit and allowed him to pay members of his own staff therefrom for services in respect to the mortgages. But it did not, in our opinion, require or permit him to reimburse an agent such as Prudence Company, Inc., for services which it was bound under its contract with the certificate holders to perform without charge. The present case was not that of a volunteer rendering services for which it was under no legal obligation, but of a company guaranteeing payment of principal and interest and bound by its contract to pay the full amount guaranteed without deduction. Its trustees are now seeking to have moneys belonging to the certificate holders subjected to claims for compensation for services which the company was bound to perform without charge. Matter of People, Lawyers' Title & Guar. Co., 265 N.Y. 287, 192 N.E. 414, does not support the trustees' contention. There a Rehabilitator (who was a public officer) was permitted to make a charge for servicing limited to one-half of one per cent payable for the guarantee but the compensation was apparently allowed for the services of the Superintendent and not of the servicing agent and guarantor where there was no differential.

We cannot agree with the position of the trustees and of the court below that the $6,187.50 ought to be subjected to a charge for servicing. These moneys represent payments on a mortgage which belong to the certificate holders. If the trustees did not wish the burden of performing the contract of Prudence Company, Inc., to service the mortgage without compensation they could have rejected it. But they might well have desired to keep control of the mortgage in order so far as possible to lessen the liability of Prudence Company, Inc., under its guar-

anty. At all events they had the option to decline to service the mortgage, if to do so was burdensome to the estate, but could not, acting under an agency which contemplated no compensation and under which the company of which they were trustees had guaranteed payment of interest, receive a part of the interest collected as fees.

The order as respects the item of $8,250 is affirmed, and as respects the item of $6,187.50 is reversed, with direction to the trustees to pay over 5/11 of the latter sum to the petitioner, Brooklyn Trust Company, which is granted costs in this court.