## In re PRUDENCE CO., Inc.
### No. 339.

Circuit Court of Appeals, Second Circuit.
July 25, 1938.

Thomas Craddock Hughes and Emanuel Celler, both of New York City (Thomas Craddock Hughes, Irving L. Schanzer, and Hubert Margolies, all of New York City, of counsel), for appellants Trustees of Prudence Co., Inc., debtor.

Edward Endelman, of New York City, pro se.

George M. Jaffin and Leonard Klaber, both of New York City, pro se.

Weinstein & Levinson, of New York City (Frank Weinstein and Samuel J. Levinson, both of New York City, of counsel), for appellants.

Archibald Palmer, of New York City, pro se.

Miller, Owen, Otis & Bailly, of New York City (Mark F. Hughes, of New York City, of counsel), for appellees Prudence Co., Inc., debtor, and Prudence Securities Corporation.

Root, Clark, Buckner & Ballantine, of New York City (William P. Palmer, Frank L. Dewey, and Everett I. Willis, all of New York City, of counsel), for appellee Reconstruction Finance Corporation.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

As a part of the proceedings for the reorganization of The Prudence Company, Inc., under the provisions of Sec. 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, a plan for the reorganization of the Debtor's Guaranteed Collateral Trust 5½ Gold Bonds issued in 1926 to mature May 1, 1961 was proposed and adopted.

These appeals, which have been consolidated for the purpose of hearing but are otherwise separate and distinct, are by attorneys who feel aggrieved by the complete denial of their applications for allowances for services in connection with' the reorganization of the above mentioned bonds and by the trustees of the debtor whose application for so-called servicing expenses was likewise disallowed.

These bonds were issued by the debtor in the principal amount of $15,000,000.00 and were secured by collateral pledged to the Central Hanover Bank and Trust Company, as trustee, under an indenture of trust. The collateral consisted mainly of mortgages on real estate; certificates of participation in mortgages; bonds of Prudence Bonds Corporation which were guaranteed by the debtor; and government bonds. On May 1, 1933, some of the coupons due on that date were not paid. This default had been foreshadowed by action taken previously by the New York Superintendent of Banks which in effect limited the amount which could be paid on the coupons to the earnings on the pledged collateral. At this time sinking fund operations had reduced the principal amount of the bonds outstanding to $13,800,000 of which $1,133,000 were owned by the Debtor itself and the remainder, $12,667,000, were held publicly.

The first legal action resulting from the default which is now of moment was one brought by a bondholder named Bertha Lann, in behalf of herself and others similarly situated, in the New York Supreme Court, New York County, against the Central Hanover Bank and Trust Company to surcharge it as trustee for claimed breaches of trust. Appellants Jaffin and Klaber acted as attorneys for the plaintiff in that action. While it was pending and in April 1934, the Central Hanover Bank and Trust Company brought its ac-

tion in the same court to foreclose under the trust indenture. A bondholders committee, known as the Schlosser Committee, had been formed and the committee was allowed to, and did, intervene in the foreclosure action. A plan of reorganization was proposed and the matter referred to James A. Martin, as referee who held hearings and filed a report. He found the plan, when amended in certain respects, to be fair and beneficial to the bondholders. His report was confirmed by the state court but it was never consummated because of the filing of an involuntary petition for reorganization under Sec. 77B by creditors of The Prudence Company, Inc., on October 24, 1934, which was followed on January 24, 1935, by the filing of a voluntary petition under that section by The Prudence Company, Inc., itself. On February 1, 1935, the District Court took jurisdiction, consolidating the proceedings under the involuntary and the voluntary petitions, and the attempted reorganization in the state court fell for that reason.

Meanwhile, the state court had on October 5, 1934, referred to James A. Martin the matter of applications made by counsel for allowances to attorneys in connection with the state court proceedings for reorganization. He thereafter conducted hearings and filed his report on January 22, 1935, in which he recommended the payment of various allowances for services and expenses including allowances to appellants Endelman, Jaffin and Klaber, and Weinstein and Levinson. This report was not confirmed by the state court. The allowances sought by the appellants and denied below were in part for matters relating to the state court proceedings for which Referee Martin had recommended allowances and in part for services in connection with the 77B proceedings. Appellant Palmer's application and that of the Trustees of the Debtor were not, however, based on anything done in the state court.

, The proposed state court plan, which was substantially incorporated in the 77B plan consummated, included the substance of an agreement for the settlement of the Lann suit against the Central Hanover Bank and Trust Company providing that that bank would lend the trust $2,000,000 for ten years on the security of a senior participation in a mortgage on a building in New York City known as the Nelson Towers which mortgage was a part of this trust collateral. The proceeds of this loan and a substantial part of the cash then held on deposit by the bank as trustee under the indenture were to be distributed pro rata to bondholders other than the Prudence Company, Inc., itself. Before the consummation of the 77B plan of reorganization as proposed by the Debtor, the matter was referred to Special Master Castellano who held sixteen hearings and on August 14, 1936 filed his report recommending its confirmation with certain amendments. After due hearing before the court, the report was modified by order dated December 16, 1936, and on January 31, 1937, the plan as so amended was confirmed.

Appellant Endelman represented a committee for the preferred stockholders in the state court proceedings and was attorney for the petitioning creditors who filed the involuntary 77B petition. He insists that due to his opposition a reorganization in the state court under the provisions of Chap. 745 of the Laws of New York of 1933, known as the Schackno Act, Unconsol.Laws N.Y. § 1796 et seq., which was advocated by some parties in interest was abandoned; that a tentative so-called trustee type plan was changed to one where a new company was to be organized; that provision was made for the appointment of successor directors by the court; that instead of distributing all the cash immediately available a reserve fund was to be set up; and that he successfully advocated changes in the form of certain collateral documents. He also insists that in the Sec. 77B proceedings he was responsible for the inclusion in the plan of part of the so-called Lann settlement; of a default clause and the elimination of a directors exculpatory clause; and succeeded in having some other beneficial changes made. His application was denied on the ground that what he did was but unneeded duplication of the efforts of others. Perhaps such a characterization is too broad in that some proposals he made were not strictly duplications but it is impossible to say with any assurance that it does not properly classify his work from the standpoint of results in that there is no reason to believe that all parties in interest were not otherwise adequately represented to the end that as good a plan would have been consummated regardless of what he did. He did not obtain any recognition in the court below, in advance of the rendition of any services, that his clients needed separate

representation nor does there appear to have been any such need in fact. We have stated at some length the general principles which should govern the action of the court in passing upon applications for allowances in such proceedings as this in Re Paramount Publix Corporation, 2 Cir., 85 F.2d 588. It is unnecessary to repeat what Judge Augustus N. Hand said then. Adherence to them requires the affirmance of the order in respect to this application.

The appeal of Jaffin and Klaber, Weinstein and Levinson, and Archibald Palmer must fail for the same reasons. It will serve no good purpose to describe in detail what they claim to have done. However good their intentions may have been there seems to be no adequate ground for disturbing the decision of the judge that their services were not of the kind for which compensation should be allowed out of the funds in the estate. All of the attorneys who acted in the state court proceedings rely rather heavily upon the fact that allowances for them were there recommended but that is of slight significance since such recommendations were not made in accordance with the principles which control here and to which reference has above been made. Compare Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599 and Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215, for the rule in this respect as to strict bankruptcy and Lion Bonding & Surety Company v. Karatz, 262 U.S. 640, 43 S.Ct. 641, 67 L.Ed. 1151 for that in an equity receivership.

The trustees of the debtor, appointed temporarily on February 1, 1935, and permanently on March 8, 1935, did what has been called the "servicing" of the collateral held in trust as security for the bond issue up to a time when they surrendered it to the reorganized company. Before the surrender, the indenture trustee had been attempting to regain the collateral, having demanded it and moved to dissolve an injunction which prevented it from taking it over. This "servicing" was done in connection with other such work by the staff employed by the trustees and what is now asked is an allowance of the general overhead expenses attributable to the work on this collateral. The trustees have been allowed all actual out of pocket expenses so incurred. They received payments on the collateral amounting to $1,208,915.05 up to the time the reorganization plan was consummated and of this have deducted and hold in a segregated account one-ninth as reimbursement claimed for the general expense of "servicing".

These trustees in effect refused to permit the indenture trustee to do work for which the so-called reimbursement is sought and acted as the trustees of a debtor bound to make payment of principal and interest to the bondholders in full. Its trustees seek now to charge for what it was obligated to do without cost to bondholders, if it did such work at all, and our decision in Re Prudence Co., Inc., 2 Cir., 96 F.2d 161 is decisive. Here as there the trustees of the debtor could have declined to undertake the work if the debtor's contract was deemed burdensome but instead they elected to do it despite the efforts of the indenture trustee to be allowed to take over the collateral.

It is urged (1) that the plan adopted and confirmed provided for the reimbursement claimed, and (2) that Sec. 77B (b) (3), 11 U.S.C.A. § 207 (b) (3), requires the making of an allowance for the expense incurred. The plan merely covered such expenses as were approved by the court and the subdivision of the statute requires only that a plan of reorganization shall provide for the payment in cash of all costs of administration and other allowances made by the court. This application is neither for expenses approved by the court nor for an allowance made by the court.

Affirmed.