### In re PRUDENCE BONDS CORPORATION.
#### No. 265.

. Circuit Court of Appeals, Second Circuit.
July 23, 1941.

Charles M. McCarty, of New York City, for Prudence Bonds Corporation (new corporation).

James F. Dealy, of New York City, for Reconstruction Finance Corporation.

Leon London, Alexander E. Klupt, Alfred E. Herz, and McKercher & Link, all of New York City, pro se.

Kadel, Shiels & Weiss, of New York City, pro se and for Prudence Bondholders Protective Ass'n.

Herman G. Robbins, of Brooklyn, N. Y., for Harry H. Oshrin.

Samuel Silbiger, of Brooklyn, N. Y., pro se.

Lawrence R. Condon, of New York City, pro se.

Alfred T. Davidson, of New York City, pro se (Orrin G. Judd, of New York City, of counsel).

Edward Endelman and Jacob A. Freedman, both of New York City, pro se.

Thomas Cradock Hughes and Emanuel Celler, both of New York City (Irving L. Schanzer and Irving Rozen, both of New York City, of counsel), for Trustee of Prudence Company, Inc.

J. M. Richardson Lyeth and John P. Allee, both of New York City, for president and directors of Manhattan Co. and Carter, Ledyard & Milburn.

Newman & Bisco, of New York City, pro se and for Manufacturers Trust Co.

Milbank, Tweed & Hope, of New York City, pro se and for Chase Nat. Bank of City of New York.

Delafield, Marsh, Porter & Hope, of New York City, pro se and for City Bank Farmers Trust Co.

Wright, Gordon, Zachry & Parlin, of New York City, pro se and for Chemical Bank & Trust Co.

Frueauff, Burns, O'Brien & Ruch, of New York City (Clinton J. Ruch and Joseph M. Sullivan, both of New York City, of counsel), for trustee of New York Investors, Inc.

Peabody, Arnold, Batchelder & Luther, of Boston, Mass., for State Street Trust Co.

John R. Walsh, of New York City, as Amicus Curiae.

Before SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This case embraces a large number of consolidated appeals from orders granting or refusing allowances in a corporate reorganization initiated under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, on June 29, 1934. In passing upon the applications for allowances the district judge ruled that the provisions of the Chandler Act 11 U.S.C.A. § 1 et seq., were applicable. The appeals came to this court in two groups. The first group, which included appeals from orders entered in February 1939, was argued in May of that year, but decision was held in abeyance until the district court should pass upon additional pending applications for compensation in order that we might know the aggregate of the administration costs. In re Prudence-Bonds Corporation, 2 Cir., 106 F.2d 44. By order entered November 6, 1939, the additional allowances were fixed. They were brought to this court by a supplemental record and constitute the second group of appeals. Argument as to this group was heard in February, 1940. Before decision was rendered motions to dismiss both groups of appeals for lack of jurisdiction were made and granted. In re Prudence-Bonds Corporation, 2 Cir., 111 F.2d 37. This order was reversed on January 6, 1941. Reconstruction Finance

Corp. et al. v. Prudence Securities Advisory Group et al., 311 U.S. 579, 61 S.Ct. 33, 85 L.Ed. ——. After the mandate of the Supreme Court came down, certain of the appealed allowances were reduced by compromise or accepted as correct by the parties appellant; the appeals with respect to all such allowances have been severed and discontinued by orders of this court. The remaining appeals have been again argued and are now before us for decision on the merits.

When Prudence-Bonds Corporation, hereafter called the debtor, filed its petition for reorganization, there were outstanding eighteen issues or series of its bonds, of the aggregate principal amount of some $56,000,000. The bonds had been sold to the investing public and were held by some 30,000 different owners. Payment of the bonds and interest thereon was guaranteed by The Prudence Company, Inc., hereafter called the guarantor. Each series of bonds was secured by a pledge of collateral deposited with a corporate trustee under a trust agreement. The pledged collateral consisted mainly of real estate mortgages, which were being "serviced" by the guarantor, although it was in default under its guaranty. Much of the delay and much of the expense incident to the debtor's reorganization was due to litigation caused by the guarantor's unwillingness to give up such "servicing." The debtor and the guarantor were affiliated corporations, the stock of each being owned by New York Investors, Inc., hereafter called the stockholder. The stockholder filed reorganization proceedings on January 7, 1935, and the guarantor did likewise on February 1, 1935. The same individuals who had been appointed reorganization trustees for the debtor, were also appointed trustees for the stockholder and the guarantor.

In addition to its eighteen series of bonds the debtor had also put out some $53,000,000 of mortgage participation certificates, but these certificates did not represent debts of the debtor and were not reorganized in this proceeding.[1] In re Prudence-Bonds Corporation, 2 Cir., 79 F.2d 212. The purpose of seeking reorganization of the debtor's eighteen series of bonds was to prevent forced liquidation and to effect a modification of the indebtedness by an extension of the maturity date and a reduction of the interest rate of each issue of bonds. After much litigation this purpose was accomplished. All that the debtor brought into the bankruptcy court for reorganization was about $11,000 in cash and its potential equity in the pledged collateral. It should have been obvious from the start that the debtor was insolvent and that no equity remained for its stockholder; but the plans proposed on behalf of the debtor did not recognize this and no finding of insolvency was made until March, 1937. Although several bondholders' committees were formed and intervened in the proceeding, the committees never enlisted enough proxies to speak with authority for the general body of bondholders. Not only these committees but also the reorganization trustees of the debtor's stockholder and some of the corporate trustees circularized the bondholders regarding the proposed plans. The result was delay, duplication of effort and additional expense. Finally, after the finding of insolvency, the plans were amended to provide for a reorganization solely in the interest of the bondholders, and thereafter progress was more rapid. On January 18, 1938, the district court confirmed the composite plan of reorganization which consists of a "General Plan" and eighteen "Series Plans", substantially uniform, one for each issue of bonds. A new corporation of the same name as the debtor, whose stock was issued to the bondholders of all series, was set up to manage, conserve and liquidate the pledged collateral. The same corporate trustee, City Bank Farmers Trust Company, was provided for all the series and this trustee is to handle distributions of principal and retirement of bonds. Should the collateral of any issue produce a surplus it will go pro rata to other issues. The effective date of the composite plan of reorganization was March 1, 1938.

Against the background of this brief outline we pass to a consideration of the present appeals. The allowances made by the orders of February, 1939, were nearly $480,000, those fixed by the order of November 6, 1939, come to about $626,000, and prior interim allowances add about $350,000 more, making a grand total of some $1,450,000. The new corporation and Reconstruction Finance Corporation appealed on the ground that the total cost of the reorganization was excessive and allowances to specified claimants too high. Appeals were

---

[1] The Seneca issue of certificates is an exception to this statement. It is of no significance in any of the present appeals except that of Alfred T. Davison.

also taken by numerous claimants who had received nothing or awards which they thought inadequate. In general we may say that we think the amounts awarded to attorneys for committees, to the debtor's trustees and their attorneys, and to the debtor's attorneys were much too high. Most of these allowances, however, are no longer before us, reductions having been arranged by settlement between the parties and the appeals involving them having been discontinued.[2]

Of the appeals which survive we will take up first those of the appellants who were refused any award whatever.

■ 1. Claim of Harry H. Oshrin. He represented several bondholders on whose behalf he brought suits in the state courts to compel the corporate trustees of the issues involved to settle their accounts and distribute the income then in their possession. These suits were stayed by order of the bankruptcy court, one of the stay orders being affirmed by this court. In re Prudence-Bonds Corporation, 75 F.2d 262. The appellant asserts that his fees for services in the state court suits are secured by an attorney's lien, but he does not say to what property the lien attaches. Certainly not to anything which the suits brought into the bankruptcy court, for they brought in nothing. In so far as the suits sought distribution of income, their object was to dissipate the reorganization estate. Denial of any allowance was plainly right. The order is affirmed.

■ 2. Claims of London, Klupt, Herz and McKercher & Link. This is a joint appeal by attorneys who severally represented individual bondholders. Since the district court ruled that it was feasible to apply the provisions of the Chandler Act, the appellants claim that they are entitled to compensation by virtue of section 243, 11 U.S.C.A. § 643. But these provisions do not mean fees as of course; compensation is to be awarded only for services which contributed to the plan confirmed or were beneficial in the administration of the estate. We, see no adequate reason to reverse the denials of compensation. They are affirmed.

■ 3. Claim of Condon. This appellant has not even thought enough of his appeal to file a brief. The order is affirmed.

■■ 4. Claim of Alfred T. Davison. He requests an allowance of (a) $1600 for services in preparing a plan for readjustment under the Schackno Act, N.Y.Laws 1933, ch. 745, Unconsol.Laws, § 1796 et seq., of the Seneca issue of mortgage certificates, and (b) $350 (plus $7.25 disbursements) for services in preparing a proof of claim based on a lease of the property covered by the Seneca mortgage. The services covered by item (a) were performed under employment by the debtor and the guarantor and before the debtor's reorganization proceedings were instituted. These proceedings necessitated abandonment of the attempt to reorganize under the Schackno Act, but the appellant claims that his services were beneficial to the plan confirmed in the debtor's proceedings and that his right to compensation, if the services were beneficial, was recognized by the order of July 2, 1936, setting up a $15,000 reorganization expense fund. The master, however, found against him on the issue of benefit. While there are similar features in the two plans, that is something to be expected even between plans independently prepared. We see no adequate ground for reversing the master's finding. The services covered by item (b) relate to a proof of claim filed in the name of The Prudence Company, Inc. against Paramount Publix Corporation. The claim was subsequently expunged without notice to Mr. Davison, thereby destroying his attorney's lien. If entitled to redress, he should seek it from The Prudence Company rather than the debtor. Denial of the Davison claim is affirmed.

■ 5. Claim of William T. Cowin, trustee of the guarantor. This is a claim for some $249,000 for the alleged cost of "servicing" sixteen of the series of bonds from February 1, 1935, to about July 1, 1936. Prior to the debtor's petition for reorganization one of the corporate trustees brought a suit to terminate "servicing" of the collateral by The Prudence Company, Inc., which was in default as guarantor. Decision for the plaintiff was rendered January 24, 1935. President & Directors of Manhattan Co. v. Prudence Company, Inc., 266 N.Y. 202, 194 N.E. 408. Forthwith the guarantor took shelter under section 77B and its trustees continued to hold on to the "servicing" business. That they were not entitled to do so was decided by this court

---

[2] Counsel for the new corporation stated that settlements effected in the appeals which have been severed and discontinued have produced a saving of $178,939.57.

on March 9, 1936. In re Prudence Co., 82 F.2d 755. A writ of certiorari was denied, Callaghan v. Marine Midland Trust Co., June 1, 1936, 298 U.S. 685, 56 S.Ct. 957, 80 L.Ed. 1405. They then applied in the debtor's proceeding for leave to service the collateral but this was denied by Judge Inch on July 14, 1936. Then at long last the guarantor's trustees gave up their struggle for future "servicing", but they retained the sum they had set aside as the cost of past servicing. Further litigation was necessary before the guarantor's trustees would give it up. In re Prudence Co., 2 Cir., 92 F.2d 419. At page 421 of 92 F.2d, we stated that any application for reimbursement for expenses in servicing the collateral would have to be made to the court having charge of the debtor's reorganization. The order on appeal is from a denial of such application. The appellant's claim lacks merit. The guarantor's trustees stubbornly hung on to the "servicing" business in the face of repeated decisions that they had no right to continue it. Their insistence upon doing it gives them no right to compensation or reimbursement of expense, as this court has previously intimated. In re Prudence Co., 2 Cir., 96 F.2d 161, 164; In re Prudence Co., 2 Cir., 98 F.2d 729, 732. The present contention that they were employed as agents by the debtor's trustees, pursuant to power conferred by the orders of June 29, 1934, and July 31, 1934, was found against them by the special master and is adequately supported by the record. We are not impressed by the fact that fees were allowed them in connection with the Fifteenth Series Plan and the Seneca Plan. This does not estop the district court or this court from considering the present application on its merits. Nor are we faced with the supposed dilemma of having to recognize that, if the servicing was unauthorized, then all acts performed by the guarantor's trustees were done without authority and are subject to attack. Acts of a volunteer which were beneficial to the debtor's trustees may be validated by ratification. The stubborn insistence of the guarantor's trustees on maintaining their position as to servicing the collateral was not beneficial; it has substantially increased the cost of the reorganization by protracted litigation. We see no equities in favor of the claimant; the equities all run the other way. The order is affirmed.

6. Claim of Charles H. Kelby, Trustee of New York Investors, Inc. This claimant seeks reimbursement of $50,954.64 expended by him as trustee of the debtor's sole stockholder in connection with promulgating plans of reorganization. The expenditures were for printing, mailing, advertising, soliciting bondholders' consents to the plans, and employing clerical help incident thereto. They were incurred at the request of the debtor's directors because the debtor itself had no money and its trustees were not authorized to propose plans under section 77B of the Bankruptcy Act. The special master treated the expenditures as a loan to the debtor to which no recognition could be given in view of the debtor's insolvency. The appellant's contention that the record does not support the theory of a loan must be sustained. The expenditures were expenses incurred by the stockholder in trying to put through a reorganization in the interest of the debtor, i.e. a plan which would preserve some value for the stock. That plan failed when the debtor's insolvency was found. Nevertheless, the stockholder's efforts were of some benefit to the plan ultimately confirmed because the consents of bondholders obtained as a result of them were turned over to the debtor and made up about half of the necessary percentage of acceptances. Under section 243 of the Chandler Act, 11 U.S.C.A. § 643, which the district court declared applicable, we think the stockholder's disbursements should have been allowed to the extent of the benefit conferred. This amount cannot be determined with mathematical certainty. When the debtor was found to be insolvent the stockholder's trustee ceased its activities in respect to obtaining consents and the debtor's trustees undertook the work with a fund provided by order of the court. The sum so spent by the debtor's trustees and approved by the court was roughly $40,000 in obtaining about the same amount of consents as had the stockholder's trustee. The order is reversed and the claim allowed in the sum of $40,000.

7. Claim of Edward Endelman and Jacob A. Freedman. These appellants filed jointly with Cullen & Dykman an application for an allowance of $50,000 for services as counsel to the General Committee for Prudence Securities. This committee was given leave to intervene by order of March 19, 1936. It represented bondholders in each of the debtor's eighteen series of bonds, and only bondholders. The master found Cullen & Dykman disqualified to receive compensation as counsel for the

General Committee because of their representation of Brooklyn Trust Company as indenture trustee of the Eighth Series of bonds. Cullen & Dykman withdrew from the joint application which was then considered as that of Messrs. Endelman and Freedman. Mr. Endelman was found to be disqualified by reason of his prior representation of the Protective Committee of Preferred Stockholders of The Prudence Company, and Mr. Freedman was denied compensation by the master because his services could not be separately appraised. The district court entered two orders: one denying the joint application for compensation, from which Messrs. Endelman and Freedman have appealed; the other awarding $5,000 to Mr. Freedman individually, from which Reconstruction Finance Corporation and the new corporation have appealed. Before accepting employment for the bondholders' committee Mr. Endelman informed the stockholders' committee and obtained their authorization to vacate the order of intervention of the stockholders' committee. The order of intervention was vacated on April 20, 1936. It is true, the interests of the two committees were in conflict. To have the guaranty of The Prudence Company continued in full force was obviously adverse to the interest of Prudence stockholders; as was also the elimination of The Prudence Company as a general creditor of the debtor to the extent of $1,000,000, and the exclusion of general creditors from participation in any plan of reorganization of the debtor. Nevertheless we believe that termination of the former employment with the client's consent entitled Mr. Endelman to take on the new employment; there is nothing to indicate that he obtained from the old client any confidential information that he used in the interest of the new. See United States v. Bishop, 6 Cir., 90 F.2d 65, 66; In re Boone, C.C.Cal., 83 F. 944. In our opinion he was not disqualified to receive compensation as an associated counsel for the General Committee. This committee evidently performed work useful to the reorganization as it was allowed fees of $11,000. We believe its counsel are entitled to a similar allowance for their services. The sum of $5,000 which the district judge allowed to Mr. Freedman individually will be credited on the $11,000 we allow to Endelman and Freedman on their appeal. They are also awarded appellate costs.

We pass now to a consideration of awards, other than those to the corporate trustees and their attorneys, which are questioned as being either excessive or inadequate.

1. Award to Jacob A. Freedman. This is sufficiently covered by the discussion of the claim of Endelman and Freedman, supra.

2. Award to Samuel Silbiger. The master recommended $1,000, which the judge increased to $5,000. Mr. Silbiger came into the proceeding at an early stage as the representative of two bondholders. Normally an attorney for a creditor must look to his own client for his compensation. See Straus v. Baker Co., 5 Cir., 87 F.2d 401, 407. Since the master and the district judge considered his services of some general benefit to the estate we are not disposed to deny him any allowance but we think $5,000 too high. One of the grounds on which he attempts to sustain it is that he was the first to move for an adjudication that the debtor was insolvent. As this motion was overruled, he can claim no credit on that account. We think an allowance of $3,000 adequate. The order will be modified accordingly.

3. Award to Prudence Bondholders Protective Association. This committee intervened on December 24, 1936. It represented some 2,100 holders of bonds, aggregating nearly $4,000,000, although other committees claimed to represent over half of the same bondholders. The committee applied for $15,000 for services and $25,228.52 for disbursements. There were already six committees in the case and the master was of opinion that this committee was not needed and contributed nothing of value for which they should be compensated out of the estate. He recommended that nothing be allowed. The district judge awarded the committee $2,500. The committee appealed as did also the new corporation and Reconstruction Finance Corporation. Quite evidently the award of $2,500 was a sop and we should be disposed to disallow it entirely except for the concession in the briefs of the new corporation and Reconstruction Finance Corporation that the committee obtained some acceptances to the plan confirmed. The allowance is affirmed.

4. Award to Kadel, Sheils and Weiss. These attorneys were counsel for Prudence Bondholders Protective Association. They requested an allowance of $50,000. The master recommended that no award be made; the judge granted an al-

lowance of $5,000. The award is before us on appeals by Reconstruction Finance Corporation and the new corporation. We are not convinced the judge was wrong. The order is affirmed.

■ 5. Award of $20,000 to Delafield, Marsh, Porter & Hope. This firm of attorneys was employed at the instance of the special master to prepare a general form of supplemental trust agreement for use in each of the 18 series. They spent 911 hours in the work. We think $10,000 would be adequate compensation for this service. The order is modified accordingly.

■ C. We come now to the awards to the corporate trustees and their attorneys. The amounts requested by the eleven corporate trustees and their attorneys totaled approximately $1,424,000. They were awarded $626,097.20.[3] In each instance the allowance made by the court was the same as that recommended by the special master. It may be noted that the major part of the allowances to the corporate trustees and their counsel include contractual claims under the trust indentures and fees for "servicing" the collateral which are not strictly expenses due to the reorganization. The master's report broke down the awards into amounts for "lien services" and amounts for "reorganization services", the total for the former being about $524,000, and for the latter about $102,000. Several of the appeals relating to these awards have been discontinued as a result of compromise between the parties. Those still pending are the following:

|  | "Lien Services" | "Reorganization Services" |
| --- | --- | --- |
| Bank of Manhattan | $56,333.41 | $ 3,380.94 |
| Its attorneys | 50,000.00 | 6,000.00 |
| City Bank Farmers Trust Co. | 54,384.74 | 6,829.60 |
| Its attorneys | 50,000.00 | 14,148.02 |
| Manufacturers Trust Co. | 41,174.80 | 6,236.92 |
| Its counsel | 27,500.00 | 5,299.57 |
| Chase Bank | 21,555.93 | 3,536.13 |
| Its counsel | 17,500.00 | 4,557.01 |
| Chemical Bank | 12,545.29 | 7,899.99 |
| Its counsel | 20,000.00 | 5,620.94 |
| Attorneys for State St. Tr. Co. | 6,403.76 | |

In arriving at the amount of the "lien" awards the master allowed for servicing collateral at the annual rate for the period of servicing of ¼ of one per cent. of the outstanding bonds; and in addition included for so-called normal services under the trust indenture at the rate of 1/30 of one per cent. annually of the outstanding bonds. The corporate trustees complain that these rates are inadequate; but both the master and the district court found that they provided reasonable compensation for the services rendered. The bankruptcy court had power to determine what was reasonable compensation for services protected by liens under the trust indentures and this court is disinclined to disturb the district judge's decision in such matters. Gross v. Busch Terminal Co., 2 Cir., 105 F.2d 930, 932. Before the special master the new corporation specified sums which should not be exceeded in making allowances to the corporate trustees. In each instance the master allowed less than the maximum suggested by the new corporation. We are satisfied to let the allowances stand. This is likewise true as to the fees awarded to attorneys of the trustees. The attorneys strenuously urge that a comparison of their awards with allowances made to the attorneys of committees, of the debtor and of the debtor's trustees shows unfair discrimination. We have already expressed the view that the allowances to those attorneys were much too high, but the discontinuance of the appeals respecting them precludes reduction of the allowances by this court. With the allowances still before us to attorneys of the corporate trustees we are satisfied.

■ The order of November 6, 1939, directed that payment of the sums classified as lien services be withheld pending disposition of proceedings for the judicial settlement of the accounts of the respective corporate trustees. In this respect the order is unnecessarily severe. There is no suggestion that the corporate trustees are not financially responsible and able to meet any surcharge which may be made in the accounting proceedings. They and their attorneys have waited long for the fees and payment should not be longer deferred.

The orders before us on appeal are modified as indicated in this opinion; as thus modified they are affirmed. No appellate costs are allowed except in the Endelman and Freedman appeal.

---

[3] This excludes the $20,000 awarded to Delafield, Marsh, Porter & Hope discussed in the preceding paragraph. Including this sum and also $56,626.16 received by the corporate trustees and their attorneys during the course of the proceedings, the total awarded them is some $702,000, of which $40,000 was for reimbursement of expenses.